IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WEST VIRGINIA by and through the WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br><br>           Plaintiffs,<br><br>    v.<br><br>ANTERO RESOURCES CORP.,<br><br>           Defendant. | Civil Action No. 1:19-CV-20 (Keeley) |

## UNOPPOSED MOTION FOR ENTRY OF CONSENT DECREE

Plaintiffs, the United States of America, and the State of West Virginia ("the State"), by and through the West Virginia Department of Environmental Protection ("WVDEP"), move the Court to approve and enter a proposed consent decree lodged with the Court on February 11, 2019, Dkt. 1-1, with ministerial adjustments described below and reflected in the attachment (the "Proposed Consent Decree"). All parties have executed the Proposed Consent Decree, and its entry by the Court is unopposed. Proposed CD ¶ 61. In support of their motion, Plaintiffs state as follows:

    1.    Beginning in early 2011, the U.S. Environmental Protection Agency ("EPA") learned of unauthorized discharges by Defendant of dredged and/or fill material (such as rock, sand, or dirt) to waters of the United States and waters of the State. The discharges occurred during the construction of well pads, pipeline stream crossings, access roads, surface impoundments, and other structures associated with Defendant's natural gas extraction

operations in West Virginia. EPA and WVDEP conducted inspections of Defendant's operations and identified several potential violations. Following these inspections, EPA, pursuant to its administrative authority under the Clean Water Act ("CWA"), issued Administrative Orders of Compliance to Defendant at nine sites and opened negotiations with Defendant regarding how to resolve the alleged violations. In further inspections during the course of negotiations, EPA noted potential violations at eight other sites and requested that Defendant remedy these potential violations.

2. In the course of negotiations, Defendant also performed an internal audit of its other operations in West Virginia and disclosed to the United States and the State the results of that audit, including 15 additional locations where unauthorized discharges of dredged and/or fill material may have occurred. After extensive settlement negotiations regarding the sites where EPA has issued Administrative Orders of Compliance or informally identified potential violations during further inspections, as well as those sites subsequently disclosed by Defendant, the parties reached agreement on the Proposed Consent Decree.

3. On February 11, 2019, the United States and the State lodged with the Court the Proposed Consent Decree, which was agreed to and signed by the United States on behalf of EPA, the State, and Defendant. The United States and the State simultaneously filed a Complaint, seeking civil penalties and injunctive relief for Defendant's alleged discharges of dredged and/or fill material into waters of the United States and waters of the State at 32 sites, which occurred without a permit issued pursuant to the CWA and without the necessary authorization under the West Virginia Water Pollution Control Act ("WPCA"). The Proposed Consent Decree, if approved and entered by the Court, would resolve all of the claims in the Complaint and thereby end the present litigation.

4. A district court should approve a consent decree if the agreement "is fair, adequate, and reasonable and is not illegal, a product of collusion, or against the public interest." *L.J. v. Wilbon*, 633 F.3d 297, 311 (4th Cir. 2011) (citing *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999)) (internal quotations omitted). When considering whether to enter a proposed consent decree, district courts "should be guided by the general principle that settlements are to be encouraged." *Id.* Where, as in this case, "the government and the alleged polluter enter into a consent decree designed to cure violations of the CWA, courts 'must be particularly deferential to the [government] agency's expertise.'" *Sierra Club v. ICG Eastern, LLC*, 833 F. Supp. 2d 571, 578 (N.D. W. Va. 2011) (quoting *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008)); *see also United States v. City of Welch, W. Va.*, No. 11-647, 2012 WL 385489, *2 (S.D. W. Va. Feb. 6, 2012) ("'The presumption in favor of settlement is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency specially equipped, trained, or oriented in the field. EPA is such an agency.'" (quoting *United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1035 (D. Mass. 1989))).

5. Under the terms of the Proposed Consent Decree, Defendant will pay a civil penalty of $1,575,000 to the United States and $1,575,000 to the State within 30 days of entry. Proposed CD ¶¶ 17–18. Defendant is also obligated to perform on-site restoration work—including removal of fill material, restoration of stream channels, planting appropriate native species, and grading and stabilizing disturbed soils—and provide off-site mitigation, as directed by EPA, to compensate for the aquatic resources impacted by the unauthorized discharges. *Id.* ¶ 21 & App. B. The Proposed Consent Decree obligates Defendant to seek to secure perpetual site protection through a conservation easement or deed restriction for the restored areas. *Id.*

¶¶ 23–24.  Where resources cannot be restored, or where perpetual site protection is unavailable, Defendant is obligated to perform off-site mitigation or to purchase appropriate off-site stream or wetland credits from a mitigation bank that has been approved by the U.S. Army Corps of Engineers.  *Id.* & App. B, Section II.

      6.     The Proposed Consent Decree also includes several forward-looking provisions to ensure that Defendant's natural gas extraction operations in West Virginia comply with the provisions of the CWA and West Virginia WPCA applicable to the discharges of dredged and fill material.  In particular, Defendant must:  provide appropriate compliance training to its employees and contractors (*id.* ¶ 26); maintain a list of its well pads and impoundments and provide that list to EPA, WVDEP, and the Corps upon request (*id.* ¶ 27); and designate regional and facility "compliance representatives" to serve as points of contact with authority to ensure Defendant's future compliance with the CWA and West Virginia WPCA in its operations in West Virginia (*id.* ¶ 28).  In addition, the Proposed Consent Decree establishes a "compliance protocol" that, for five years after the entry of the Consent Decree, obligates Defendant at its operations in West Virginia to:  perform pre-construction assessments of aquatic resources; consider alternatives whenever that assessment identifies potential impacts to aquatic resources; document why any such alternatives were not selected; avoid and minimize such impacts to the maximum extent practicable; comply with applicable permitting requirements; and follow appropriate engineering, stabilization, and erosion and sediment control standards.  *Id.* ¶ 29.  For one year following entry of the Proposed Consent Decree, Defendant must also provide advance notice to the United States and the State of any construction activity that otherwise would not have required pre-construction notice under certain provisions of the Corps' Nationwide Permit program for discharges of dredged and fill material.  *Id.* ¶ 31.

7.     As of the time of this filing, Defendant has already completed restoration work at four of the sites covered by the Proposed Consent Decree, has an EPA-approved restoration or mitigation plan or has initiated restoration work at six other sites, and has submitted a proposed restoration plan or has initiated restoration work at seventeen additional sites.  Defendant has also taken steps to identify a mitigation site for which it will submit a restoration plan from which an estimated 5,021 stream credits and 2.3 wetland credits as calculated in the West Virginia Stream and Wetland Valuation Metric may potentially be generated and used to offset on-site impacts that have been or will be agreed to by the parties.

8.     The Court should approve and enter the Proposed Consent Decree, because the Decree is fair, adequate, reasonable, and in the public interest.  The Proposed Consent Decree was reached as the result of extensive negotiations carried out in good-faith among well-informed parties.  Resolution of this matter through the Proposed Consent Decree will save significant time and resources both for the parties and the Court.  Moreover, the Proposed Consent Decree is consistent with the requirements, goals, and purposes of the CWA and of the West Virginia WPCA.  The parties to the Proposed Consent Decree have agreed to its entry without the need for further consent.  Proposed CD ¶ 66.

9.     Pursuant to 28 C.F.R. § 50.7, the United States Department of Justice published notice of the Proposed Consent Decree in the *Federal Register* on February 15, 2019, and requested public comment for a period of 30 days.  *See* Notice of Lodging Proposed Consent Decree, 84 Fed. Reg. 4,541.  The 30-day comment period has expired.

10.    Pursuant to W. Va. Code R. § 47-10-16.2.c, the State published notice of the Proposed Consent Decree in local newspapers and on its website on or before February 20, 2019,

and requested public comment for a period of 30 days. That 30-day comment period has also expired.

11. Under 28 U.S.C. § 50.7(b), the United States reserves the right to withdraw or withhold its consent from a proposed consent decree if public comments "disclose facts or considerations which indicate that the proposed judgment is inappropriate, improper or inadequate." The Department of Justice received four comments after lodging the Proposed Consent Decree, and those comments provide no basis for the United States to withhold or withdraw its consent to the Proposed Consent Decree. Three comments identified conditions at or near the County Road 32/6 site (associated with Bowyer) that will likely be remedied by the restoration plan that EPA approved for that site on December 18, 2018, as part of the negotiation process that resulted in the Proposed Consent Decree. Specifically, the commenters noted issues with the well pad and drilling process at the site dating back to 2012 that have led to fill materials being placed in the stream along County Road 32/6, as well as related runoff and flow issues on the surrounding properties.

12. The United States does not believe that these comments require modification of the Proposed Consent Decree. As discussed above, the Complaint that would be resolved by the Proposed Consent Decree alleges violations of the prohibition in the CWA against the unauthorized discharge of dredged and/or fill material (such as dirt, rock, or sand) into waters of the United States and related violations of the West Virginia WPCA. The conditions identified by the three commenters at the County Road 32/6 site and surrounding areas are among the alleged violations that Plaintiffs first became aware of in 2011 and that resulted in the development of the Proposed Consent Decree. Indeed, the three comments reinforce the need to enter the Proposed Consent Decree and ensure that the December 18, 2018 restoration plan for

the County Road 32/6 site is carried out in a timely fashion. If the restoration work carried out under the plan is ultimately insufficient to restore the affected areas, EPA will work with Defendant to ensure that Defendant fully remedies the stream impacts, including amending the restoration plan, if appropriate. The fourth comment, which was anonymous, addressed matters beyond the scope of the Proposed Consent Decree and does not provide a basis for the United States to withhold its consent.

13. Under W. Va. Code R. § 47-10-16.2.c, the Director of the WVDEP is required to consider any comments received during the public comment period on a proposed settlement of an enforcement action. Here, WVDEP received no comments and has determined that entry of the Proposed Consent Decree is in the best interests of the State.

14. Since lodging the Proposed Consent Decree on February 11, 2019, EPA has identified three ministerial adjustments that the parties have agreed are necessary to the Proposed Consent Decree prior to moving for entry. These changes are reflected in the attachment to this motion. First, as a result of an internal reorganization process at EPA, Carrie Traver and Todd Lutte are no longer points of contact for the purposes of the Proposed Consent Decree and must be replaced. Specifically, the reference to Todd Lutte in Paragraph 59 has been replaced by Lisa M. Donahue, who is the Acting Chief of the Safe Drinking Water Act & Wetlands Section, and in Paragraph 31, Carrie Traver's email address has been replaced with that of Timothy Witman, Physical Scientist, Enforcement & Compliance Assurance Division, Safe Drinking Water Act & Wetlands Section. Second, in Paragraph 31, the referenced Nationwide Permit General Condition has been changed from 31 to 32 because the numbers changed during a recent reissuance of the Nationwide Permits. Third, counsel inadvertently omitted Exhibit A to Appendix E of the Proposed Consent Decree, which is a description of the conservation

easements for the proposed Bear Knob mitigation site referenced in Appendix E, from the lodged version of the consent decree. This Exhibit is now included in the attached Proposed Consent Decree, as the parties intended. These changes do not materially alter the terms or obligations set out in the Proposed Consent Decree lodged with this Court.

15. For the reasons set forth above, the United States has concluded that there is no reason for the United States to withhold or withdraw its consent to the Proposed Consent Decree, and we accordingly join the other parties in consenting to its entry.

WHEREFORE, the United States and the State respectfully request that the Court sign the attached Proposed Consent Decree and enter it as an order of the Court.

Dated: May 17, 2019

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

/s/ *Patrick R. Jacobi*
PATRICK R. JACOBI
Trial Attorney
Environment and Natural Resources Division
U.S. Department of Justice
Denver Place Building
999 18th Street
Suite 370 – South Terrace
Denver, CO  80202
Phone:  (303) 844-1348
Fax:  (303) 844-1350
patrick.r.jacobi@usdoj.gov

CHLOE H. KOLMAN
Trial Attorney
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Phone: (202) 514-9277
Fax:    (202) 514-8865
chloe.kolman@usdoj.gov

        WILLIAM J. POWELL
United States Attorney for the
Northern District of West Virginia

/s/   *Helen Altmeyer*
HELEN ALTMEYER
Assistant United States Attorney
U.S. Courthouse & Federal Bldg.
1125 Chapline Street, Suite 3000
Wheeling, WV 26003
Phone: (304) 234-7763
helen.altmeyer@usdoj.gov

OF COUNSEL:

PAMELA J. LAZOS
Office of Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103


FOR THE STATE OF WEST VIRGINIA:

/s/   *Scott Driver*
SCOTT DRIVER, W.Va. Bar ID #9846
West Virginia Department of Environmental
       Protection
Office of Legal Services
601 57th Street SE
Charleston, WV 25304
Phone: (304) 926-0460 x 1453
Fax:    (304) 926-0461
charles.s.driver@wv.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA and
THE STATE OF WEST VIRGINIA by and
through the WEST VIRGINIA
DEPARTMENT OF ENVIRONMENTAL
PROTECTION,

      Plaintiffs,

v.

ANTERO RESOURCES, CORP.,

      Defendant.

Civil Action No. 1:19-CV-20 (Keeley)

## **CERTIFICATE OF SERVICE**

I, Helen Altmeyer, hereby certify that on the 17th day of May, 2019, the foregoing Unopposed Motion for Entry of Consent Decree was served using the CM/ECF system, which will cause a copy to be served upon counsel of record.

/s/ *Helen Altmeyer*
HELEN ALTMEYER
Assistant United States Attorney
U.S. Courthouse & Federal Bldg.
1125 Chapline Street, Suite 3000
Wheeling, WV 26003
Phone: (304) 234-7763
helen.altmeyer@usdoj.gov