# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### CLARKSBURG DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF WEST VIRGINIA by and through THE WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION,<br><br>           Plaintiffs,<br><br>           v.<br><br>ANTERO RESOURCES CORPORATION,<br><br>           Defendant. | Civil Action No. 1:19-CV-20 |

**FILED**

MAY 2 2 2019

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

## CONSENT DECREE

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | JURISDICTION AND VENUE | 7 |
| II. | APPLICABILITY | 7 |
| III. | SCOPE AND EFFECT OF CONSENT DECREE | 9 |
| IV. | CIVIL PENALTY | 11 |
| V. | RESTORATION, MITIGATION, AND PRESERVATION | 12 |
| VI. | COMPLIANCE ASSURANCE PROGRAM | 17 |
| VII. | REPORTING REQUIREMENTS | 28 |
| VIII. | STIPULATED PENALTIES | 29 |
| IX. | RETENTION OF RECORDS AND INSPECTIONS | 32 |
| X. | DISPUTE RESOLUTION | 35 |
| XI. | FORCE MAJEURE | 36 |
| XII. | NOTICES AND SUBMISSIONS | 38 |
| XIII. | COSTS OF SUIT | 41 |
| XIV. | PUBLIC COMMENT | 41 |
| XV. | CONTINUING JURISDICTION OF THE COURT | 41 |
| XVI. | ENTRY AND MODIFICATION | 41 |
| XVII. | EFFECTIVE DATE | 42 |
| XVIII. | TERMINATION | 42 |
| XIX. | SIGNATORIES/SERVICE | 43 |
| XX. | APPENDICES | 44 |

WHEREAS, Plaintiffs, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of West Virginia ("the State") by and through the West Virginia Department of Environmental Protection ("WVDEP"), have filed a Complaint in this action concurrently with this Consent Decree against Defendant, Antero Resources Corporation, formerly known as Antero Resources Appalachian Corporation ("Antero"), alleging that Defendant violated Sections 301(a) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a), and the West Virginia Water Pollution Control Act ("WPCA"), W. Va. Code Chapter 22, Article 11, *et seq*.;

WHEREAS, the Complaint alleges that Defendant violated CWA Section 301(a) and the West Virginia WPCA, W. Va. Code Chapter 22, Article 11, *et seq*., by discharging pollutants, including dredged and/or fill material, and/or controlling and directing the discharge of pollutants, including dredged and/or fill material, into waters of the United States and waters of the State, without authorization, at various locations in West Virginia, as identified and described in the Complaint (the "Sites");

WHEREAS, as a result of Defendant's investigation, certain Sites addressed by the Complaint were disclosed by Defendant to Plaintiffs as locations where potential violations of CWA Section 301(a) and the West Virginia WPCA may have occurred, and Plaintiffs subsequently allege that violations occurred at these sites;

WHEREAS, as part of its cooperation, Defendant prepared and presented to Plaintiffs its analyses of impacts of various well pads, ponds, and associated access roads in West Virginia, owned or controlled by Defendant, including the disclosed locations, and provided Plaintiffs an opportunity to visit the locations to further access such analyses;

3

WHEREAS, Defendant has responded to Requests for Information issued by EPA on April 14, 2011, and May 23, 2011;

WHEREAS, Defendant has worked cooperatively to comply with Administrative Orders issued by EPA regarding certain of the Sites identified in Appendix A;

WHEREAS, Plaintiffs, as stated in the Complaint seek:  (1) to enjoin the discharge of pollutants, including dredged and/or fill material, into any waters of the United States except in compliance with the CWA Section 301(a), 33 U.S.C. § 1311(a), and the West Virginia WPCA, W. Va. Code Chapter 22, Article 11, *et seq*.; (2) to require Defendant, at its own expense and at the direction of the EPA, WVDEP, and/or the U.S. Army Corps of Engineers ("Corps"), to effect complete restoration and/or mitigation of waters of the United States, including wetlands, at the above-named Sites and/or to conduct off-site mitigation for environmental damage; and (3) to require Defendant to pay civil penalties, as provided in 33 U.S.C. §§ 1319(d) and 1321(b)(7)(A), and W. Va. Code § 22-11-22;

WHEREAS, this Consent Decree is intended to constitute a complete and final settlement of the United States' civil claims under the CWA as alleged in the Complaint regarding the Sites, and the State's civil claims under the West Virginia WPCA, W. Va. Code Chapter 22, Article 11, as alleged in the Complaint regarding the Sites;

WHEREAS, Plaintiffs and Defendant agree that settlement of this case is in the public interest and that entry of this Consent Decree is the most appropriate means of resolving the claims against Defendant in this case; and

WHEREAS, the parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, will avoid litigation, and is a reasonable and fair settlement of Plaintiffs' claims against Defendant, and that this

4

Consent Decree adequately protects the public interest in accordance with the CWA and the

West Virginia WPCA;

THEREFORE, before the taking of any testimony upon the pleadings, without further

adjudication of any issue of fact or law, and upon consent of the parties hereto by their

authorized representatives, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

<u>DEFINITIONS</u>

Terms used in this Consent Decree that are defined in the CWA, the West Virginia

WPCA or in regulations promulgated pursuant to the CWA or the West Virginia WPCA shall

have the meanings assigned to them in the statute or such regulations, unless otherwise provided

in this Consent Decree.  Whenever the terms set forth below are used in this Consent Decree, the

following definitions shall apply.

"Fair Market Value" means the difference between the relevant property value (a) before

the restriction to be imposed pursuant to this Consent Decree is placed, and (b) as if the

restriction to be imposed pursuant this Consent Decree is in place as of a current date.  Such

difference in value shall be determined by an appraisal that complies with the Uniform Appraisal

Standards for Federal Land Acquisition (UASFLA or Yellow Book) and is performed by an

appraiser who (a) is a State Certified General Real Property Appraiser, (b) is in good standing

with the licensing authority where the credential was issued, (c) has demonstrated competency in

compliance with UASFLA in conducting appraisals of properties with and without the restriction

of the type to be imposed pursuant to this Consent Decree, (d) can provide documentation of

appraisal education courses attended including course completion for the restriction to be

imposed pursuant to this Consent Decree, and (e) has been approved by EPA, in consultation

with the State, in writing.  If EPA, in consultation with the State, does not object to the proposed

appraiser within 60 days following notification of the selection of the proposed appraiser, the proposed appraiser shall be approved for the purpose of performing the appraisal. After approval, EPA reserves the right to seek replacement of the appraiser for good cause.

"Impoundment" means a man-made excavation or diked area for the retention of fluids and excludes permitted stormwater management facilities.

"Limits of Disturbance" means the outermost boundary of the area planned to be disturbed by construction, material storage, grading, grubbing, or landscaping as indicated by the design plan submitted to the State in an application to obtain a permit to construct.

"OG Facilities" or "OG Facility" shall mean any of the Defendant's operations located in West Virginia involved in the physical exploration and extraction of oil and/or gas, including, but not limited to wells, well pads, access roads, surface impoundments, pipelines, and compressor stations.

"Qualified Wetlands Professional" means an individual trained to identify potential aquatic resources by education and experience. A Qualified Wetlands Professional shall include one who has obtained a four-year degree in a wetland-related field, has completed at least a basic delineation training course (minimum of 24 hours of course time) in wetland science offered by professional trade associations, societies, government agencies or universities, and has been trained in implementation of the 1987 Corps Wetlands Manual and Regional Supplements.

"Sites" means all of the locations where the Complaint filed with this Consent Decree alleges violations of the CWA and/or the West Virginia WPCA, as listed and fully described in Appendix A.

## I.     JURISDICTION AND VENUE

1.   This Court has jurisdiction over the subject matter of this action and over the parties

pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367.  For purposes of this Consent

Decree, or any action to enforce or interpret this Consent Decree, Defendant consents to

the Court's jurisdiction over Defendant, this Consent Decree, and any action to enforce or

interpret this Consent Decree.

2.   Venue is proper in the Northern District of West Virginia pursuant to CWA Sections

309(b), 33 U.S.C. §§ 1319(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the

violations alleged in the Complaint are alleged to have occurred in this District, the Sites

that are the subject of the Complaint are located in this District, and Defendant conducts

business in this District.

3.   The Complaint states claims upon which relief can be granted pursuant to Sections 301,

309, and 404 of the CWA, 33 U.S.C. §§ 1311, 1319, and 1344, and Sections 8 and 22 of

the West Virginia WPCA, W. Va. Code §§ 22-11-8 and 22-11-22.

## II.     APPLICABILITY

4.   The obligations arising from this Consent Decree shall apply to and be binding upon

Defendant, each of its officers, directors, agents, employees, servants, successors and

assigns and any person, firm, association, partnership or corporation who is, or will be,

acting in concert or participation with Defendant, whether or not such person or entity

has notice of this Consent Decree.

5.   In any action to enforce this Consent Decree against Defendant, Defendant shall not raise

as a defense the failure of any of its officers, directors, agents, employees,

representatives, servants, and their successors and assigns or any person, firm,

association, partnership or corporation (including, but not limited to, contractors of Defendant), acting in concert or participation with Defendant, to take any actions necessary to comply with the provisions hereof, nor shall Defendant alter its corporate structure or enter into any agreement with third parties for the purpose of directly or indirectly circumventing the requirements of this Consent Decree.

6.    The transfer of ownership, operation, or other interest in the Sites, or, if applicable, any additional locations used for mitigation or preservation pursuant to Section V of this Consent Decree, shall not alter or relieve Defendant of its obligation to comply with all of the terms of this Consent Decree.  At least 30 days prior to the transfer of ownership or other interest in any of the Sites, or any additional locations used for mitigation or preservation pursuant to Section V of this Consent Decree, Defendant shall provide written notice and a true copy of this Consent Decree to each successor in interest to such Sites and shall simultaneously notify the United States Department of Justice, EPA, the Corps, the State, and the United States Attorney for the Northern District of West Virginia at the addresses specified in Section XII, below (Notices and Submissions), that such notice has been given.  As a condition to any such transfer, Defendant shall expressly reserve all rights necessary to comply with the terms of this Consent Decree. Nothing herein, however, shall be deemed to preclude a new owner of a Site or of any additional locations used for mitigation or preservation pursuant to Section V of this Consent Decree from completing the tasks set forth in this Consent Decree, provided, however, that Defendant shall remain obligated for performance of the tasks set forth in this Consent Decree.  Any attempt to transfer ownership or operation of any of the Sites, or of any additional locations used for mitigation or preservation pursuant to Section V of

8

this Consent Decree, without complying with this Paragraph, constitutes a violation of this Consent Decree.

### III.   SCOPE AND EFFECT OF CONSENT DECREE

7.   This Consent Decree shall constitute a complete and final settlement of all civil claims for injunctive relief and penalties alleged in the Complaint against Defendant with regard to the Sites under Section 301 of the CWA, and under the West Virginia WPCA, W. Va. Code Chapter 22, Article 11, Section 1, e*t seq.*

8.   It is the express purpose of the parties in entering into this Consent Decree to further the objectives set forth in CWA Section 101, 33 U.S.C. §§ 1251, *et seq.*, and West Virginia WPCA, W. Va. Code Chapter 22, Article 11, Section 1, *et seq.*  All plans, studies, construction, remedial maintenance, monitoring programs, compliance programs, and any other obligations arising under this Consent Decree or resulting from the activities required by this Consent Decree shall have the objective of causing Defendant to achieve and maintain compliance with, and to further the purposes of, the CWA and the West Virginia WPCA.

9.   This Consent Decree in no way affects or relieves Defendant of its responsibility to comply with any applicable federal, state, or local law, regulation, or permit.

10.   This Consent Decree is not and shall not be interpreted to be a permit or modification of any existing permit issued pursuant to Sections 402 or 404 of the CWA, 33 U.S.C. §§ 1342 or 1344, or any other law.  Nothing in the Consent Decree shall limit the ability of the Corps to issue, modify, suspend, revoke, or deny any individual permit or nationwide or regional permit, nor shall this Consent Decree limit EPA's ability to exercise its authority pursuant to Section 404(c) of the CWA, 33 U.S.C. § 1344(c).

11.     The parties acknowledge that Nationwide Permit 32 ("NWP 32"), found at 82 Fed. Reg. 1,860 (Jan. 6, 2017), authorizes any fill to remain in place in the areas identified in the Restoration Plans approved pursuant to Appendix B, subject to the conditions provided in NWP 32, any State conditions on the use of NWP 32 (including, where applicable, West Virginia's Standard Conditions for CWA Section 401 certification of NWP 32), and this Consent Decree. The parties further acknowledge that NWP 32 authorizes the discharge of dredged or fill material insofar as such discharge is necessary to complete the work required to be performed pursuant to this Consent Decree. Any such discharge of dredged or fill material necessary for work required by this Consent Decree shall be subject to the conditions of NWP 32, any State conditions on the use of NWP 32, including, where applicable, West Virginia's Standard Conditions for CWA Section 401 certification of NWP 32, and this Consent Decree.

12.     The United States and the State reserve any and all legal and equitable remedies available to them to enforce the provisions of this Consent Decree and applicable law. This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the CWA or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 7. The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, any of Defendant's operations, whether related to the violations addressed in this Consent Decree or otherwise.

13.     Nothing in this Consent Decree shall constitute an admission of fact or law by any party.

14.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, or other appropriate relief relating to Defendant, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved as specified in Paragraph 7 of this Consent Decree.

15.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## IV.     CIVIL PENALTY

16.     Defendant shall pay the sum of $ 3,150,000, 50 percent to the United States and 50 percent to the State, within 30 days of the entry of this Consent Decree.

17.     Defendant shall make payment to the United States, as required by Paragraph 16, above, by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice in accordance with electronic funds transfer procedures, referencing U.S.A.O. file number (_____), EPA Region III, and DOJ case number 90-5-1-1-19240.  Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited on the next business day.

18.     At the time of payment, Defendant shall send by mail a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state the payment is for the civil penalty owed pursuant to the Consent Decree in *U.S., et al. v. Antero Resources Corporation*, and shall reference DOJ case number 90-5-1-1-19240, to

the Department of Justice and EPA at the addresses set forth in Section XII of this

Consent Decree (Notices and Submissions).  Defendant shall also send a copy of the EFT

form, transaction record, and transmittal letter by email to

acctsreceivable.CINWD@epa.gov, and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, OH  45268

19.    Defendant shall make payment to the State, as required by Paragraph 16, above, by

certified or cashier's check to WVDEP to be equally deposited in the WVDEP's Water

Quality Management Fund.  The payment shall be mailed to:

> Chief Inspector
> Environmental Enforcement
> West Virginia Department of Environmental Protection
> 601 57th Street, SE
> Charleston, WV  25304

20.    Defendant shall not deduct any penalties paid under this Consent Decree pursuant to this

Section or Section VIII ("Stipulated Penalties") in calculating its federal, state or local

income tax.  For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of

the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Sections V

(Restoration, Mitigation and Preservation), VI (Compliance Assurance Program), VII

(Reporting Requirements), and IX (Retention of Records) is restitution or required to

come into compliance with the law.

## V.    RESTORATION, MITIGATION, AND PRESERVATION

21.    Defendant shall submit delineation reports, and shall perform restoration and mitigation

projects, under the terms and conditions stated in Appendix B, "Work Plans and

Specifications for Restoration and Mitigation Projects," appended hereto and

incorporated herein by reference.

22.   Upon completion of the restoration and mitigation projects for those Sites set forth in Appendix A and required by Paragraph 21 under the terms and conditions of Appendix B, Defendant shall not mow, cut, clear, cultivate, dredge, excavate, farm, fill, dewater, drain, or otherwise disturb in any manner whatsoever any location where restoration or mitigation of aquatic resources has occurred pursuant to Appendix B, except as approved by EPA (in consultation with the Corps) and the State in writing.

23.   To ensure that all parcels of land identified in Appendix B remain undisturbed, and within 180 days of entry of this Consent Decree, or within 180 days of EPA's approval of each Restoration Plan required under Appendix B, whichever is later, or by another date agreed upon in writing by the United States, the State, and Defendant, Defendant shall:

a.   For all parcels of land in Appendix B that Defendant holds in fee simple, record (or deliver to the grantee for recording) a conservation easement ("Conservation Easement(s)") with the Recorder of Deeds Office for the County in which the Conservation Easement is located.  Each Conservation Easement shall:  comply with West Virginia's Conservation Easement Act, W. Va. Code Chapter 20, Article 12; identify EPA, the Corps, and WVDEP as third-party beneficiaries; and be substantially similar to the sample attached in Appendix C.  The Conservation Easements must be granted to a "holder" satisfying the definition set forth at W. Va. Code Section 20-12-3(b) agreed to by EPA (in consultation with the Corps) and by WVDEP (in consultation with the West Virginia Department of Natural Resources).   In the event that Defendant cannot secure a Conservation Easement and documents a good faith attempt to secure a Conservation Easement consistent with Paragraph 23(c)(ii), then for all Sites that

13

Defendant holds in fee simple Defendant shall:  (1) record deed restrictions ("Deed Restrictions") substantially similar to the sample attached as Appendix D; (2) ensure that each Deed Restriction provides that each deed, title, or other instrument conveying an interest in the subject parcel shall contain a notice stating that the property is subject to this Consent Decree; and (3) ensure that each Deed Restriction shall reference the recorded location of the Consent Decree and any restrictions applicable to the property under this Consent Decree.  Upon recording of each Conservation Easement (or upon delivery to the grantee for recording) or Deed Restrictions, Defendant shall give notice to the United States, EPA and the State of such recording at the addresses in Section XII ("Notices and Submissions").

      b.      For all parcels of land identified in Appendix B that Defendant does not hold in fee simple, make a good faith attempt to secure a conservation easement in the same form and manner as described in Paragraph 23(a) of this Consent Decree.  In the event that a Conservation Easement is not secured for any parcel of land identified in Appendix B after Defendant has made and documented a good faith attempt to secure one consistent with Paragraph 23(c)(i) or (ii), Defendant shall make a good faith attempt to secure deed restrictions ("Deed Restrictions") for the subject parcel.  The Deed Restrictions for each parcel shall be recorded with the Recorder of Deeds Office in the County in which the subject parcel is located.  The Deed Restrictions shall be:  (1) substantially similar to the sample attached as Appendix D; and (2) shall provide that each deed, title or other instrument conveying an interest in the subject parcel shall contain a notice stating that the property is subject to this Consent Decree and shall reference the recorded location of the Consent Decree and any restrictions applicable to

the property under this Consent Decree.  Upon recording the Deed Restrictions for each

parcel, Defendant shall give notice to the United States, EPA and the State at the

addresses in Section XII ("Notices and Submissions").

      c.      For the purposes of this Paragraph 23:

      (i)      Defendant makes and documents a good faith attempt to secure a

Conservation Easement or Deed Restrictions by presenting the owner of the fee

simple interest with a certified letter, copied to EPA, the Department of Justice,

the Corps, and the State at the addresses set forth in Section XIII below, setting

forth an offer to purchase or otherwise obtain the Conservation Easement or Deed

Restrictions for a price reflecting at least the Fair Market Value for the

Conservation Easement or Deed Restrictions.  Nothing in this Paragraph shall

foreclose Defendant from negotiating with the property owner or offering a price

that is less than the Fair Market Value, provided, if such offer is not accepted, that

Defendant ultimately offers a price that reflects Fair Market Value.

      (ii)      Defendant may also document a good faith attempt to secure by

presenting a letter to EPA, the Department of Justice, the Corps, and the State at

the addresses set forth in Section XIII below, setting forth Defendant's efforts to

secure a holder, as defined in Paragraph 23(a), and documenting that such efforts

have been unsuccessful.  Defendant may submit a single letter documenting its

efforts to secure a holder that applies to multiple Sites and need not submit

separate letters for each Site, provided that Defendant documents that its efforts to

secure a holder apply to all or multiple Sites based upon common site

characteristics (such as size, etc.).

d.      In the event that Defendant is unable to secure a Conservation Easement or Deed Restriction, after documenting a good faith attempt pursuant to Paragraph 23(c), then Defendant shall, as directed by EPA (in consultation with WVDEP and the Corps), provide additional compensatory mitigation (as calculated by the West Virginia Stream and Wetland Valuation Metric 2.1 ("WVSWVM") applicable at the time Defendant requires such additional compensatory mitigation) to off-set the loss of permanent protection for the subject parcel or parcels.  Such compensatory mitigation shall be consistent with applicable EPA and Corps regulations and guidance.

24.    If any Conservation Easement or Deed Restrictions described in Paragraph 23 is found to be defective or unlawful according to applicable law at any time, the United States and/or the State may: (1) enforce the Consent Decree against Defendant, or its successors or assigns, to obtain the granting of a Conservation Easement or Deed Restrictions for the subject parcel that complies with applicable law; and/or (2) require additional compensatory mitigation, as provided above in Paragraph 23(d), to off-set the loss of permanent protection of the specific site for which the Conservation Easement or Deed Restriction was found to be defective or unlawful.

25.    Defendant shall within 120 days after the entry of this Consent Decree or 120 days after approval of Bear Knob restoration plan, place or ensure the placement of a Conservation Easement on the property identified in Appendix E.  In accordance with the terms of Appendix E, Defendant shall perform on-site mitigation at that property.  Credits generated from such mitigation shall be available as compensatory mitigation under Paragraph 23(d) and to offset mitigation requirements at Sites as set forth herein in Exhibit A to Appendix E.

VI.        COMPLIANCE ASSURANCE PROGRAM

26.    Training.

         a.        Within 30 days after entry of this Consent Decree, Defendant shall

develop a training program to ensure compliance with the CWA and the West Virginia

WPCA with respect to the discharge of dredged and/or fill material and to ensure

implementation of the Compliance Protocol set forth in this Consent Decree at

Defendant's OG Facilities.  The training program shall be provided to Defendant's

employees whose responsibilities include the design and construction of Defendant's OG

Facilities and to all employees responsible for the direct supervision of construction of

Defendant's OG Facilities, to ensure that they are aware of the measures necessary to

ensure compliance with Sections 301 and 404 of the CWA and the West Virginia WPCA,

and to ensure implementation of the Compliance Protocol set forth in this Consent

Decree.  The Defendant shall require construction contractors responsible for the direct

supervision of construction of OG facilities to provide to its similar employees training

equivalent to that provided by Antero to its employees as set forth above in this

paragraph and further require that contractors provide to Antero

certification/documentation that it has provided such equivalent training.

         b.        In its reporting pursuant to Paragraph 32 of this Consent Decree,

Defendant shall provide a listing of each employee who has received training under this

Paragraph 26 during the relevant reporting period and provide

certification/documentation provided by its contractors of equivalent training.

27.    List of Facilities.  Within 30 days after entry of this Consent Decree, Defendant shall

establish, provide to EPA, the Corps, and the State at the addresses set forth in Section

17

XIII, and maintain for the duration of the Consent Decree a list of its OG Facilities.  The list of OG Facilities required by this Paragraph shall identify the location (latitude/longitude, nearest town, county) of each OG Facility, the type of operation (well pad, pipeline, access road, etc.), and the nearest receiving stream or other aquatic resource.  Defendant shall update the list quarterly to include new OG Facilities as they are established until the termination of this Consent Decree.  The list shall be maintained at Defendant's offices in Denver, Colorado, and shall be made available immediately upon request to authorized representatives of EPA, the State, and the Corps.  If Defendant asserts that all or portions of such list include Confidential Business Information ("CBI"), EPA, the Corps, and the State will follow their existing procedures for handling CBI. *See, e.g.,* 40 C.F.R. §§ 2.201-2.215 & 2.302; 32 C.F.R. §§ 286.12(d), 518.13(d); W. Va. Code § 29B-1-4, and WVDEP Communication Policy #10 (Information Requests).

28.   <u>Designation of Compliance Representatives</u>.

a.   Within 60 days after entry of this Consent Decree, Defendant shall designate one Regional Compliance Representative ("RCR") with responsibility for oversight of all activities that involve or may involve discharges of dredged or fill material into waters of the United States for Defendant's OG Facilities.  The RCR must:

(i)   be an employee of Defendant;

(ii)   complete the training described in Paragraph 26 above no later than 30 days after the implementation of that training program, or prior to appointment as an RCR pursuant to this Paragraph;

(iii)     serve as Defendant's primary point of contact for EPA, the Corps, and WVDEP with respect to matters involving Defendant's compliance with the CWA and, the West Virginia WPCA;

(iv)     serve as coordinator and primary point of contact as between the individual Facility Compliance Representatives and EPA, the Corps and WVDEP;

(v)     be authorized by Defendant and have the responsibility to supervise the actions of the Facility Compliance Representatives, as described in subparagraph (b) of this Paragraph, below, and all work necessary to meet the requirements of the CWA and the West Virginia WPCA;

(vi)     be authorized by Defendant to direct employees, contractors, sub-contractors, consultants, and other agents to take appropriate actions to ensure compliance, and address any failure to comply, with the CWA and the West Virginia WPCA; and

(vii)     be responsible for providing and maintaining the list of OG Facilities described in Paragraph 27, above.

b.     Within 60 days after entry of this Consent Decree, Defendant shall designate at least one Facility Compliance Representative ("FCR") for each OG Facility. Defendant may designate the same FCR for a number of OG Facilities covered by this subparagraph.  The FCR must fulfill all of the responsibilities and requirements set forth below, for each of the sites for which that individual has been designated as the FCR. Each FCR shall:

(i)     be an employee or third-party contractor of Defendant;

19

(ii)    complete the training described in Paragraph 26 above no later than 30 days after the implementation of that training program, or prior to appointment as an FCR pursuant to this Paragraph;

(iii)    serve as Defendant's secondary point of contact for EPA, the Corps, and WVDEP with respect to matters involving Defendant's compliance with the CWA, this Consent Decree, and, for operations within West Virginia, compliance with the West Virginia WPCA, at each OG Facility for which the FCR has been designated;

(iv)    be authorized by Defendant and have the responsibility to supervise all work necessary to meet the requirements of the CWA, this Consent Decree, and the West Virginia WPCA, at each OG Facility for which the FCR has been designated, including work performed by contractors, sub-contractors, and consultants;

(v)    be authorized by Defendant and have the responsibility to direct employees, contractors, sub-contractors, consultants, and other agents to take appropriate actions to ensure compliance, and address any failure to comply, with the CWA, this Consent Decree, and the West Virginia WPCA at each OG Facility for which the FCR has been designated;

(vi)    report to the RCR regarding compliance with the CWA, this Consent Decree, and the West Virginia WPCA, with respect to each OG Facility for which the FCR has been designated; and

(vii)    ensure that operations at each OG Facility for which the FCR has been designated are consistent with the Compliance Protocol described in Paragraph 29 below.

c.    The RCR, FCR, or a designee shall be responsible for acknowledging in writing the receipt of any concerns and/or questions received by the RCR and FCR from the Plaintiffs related to this Consent Decree in writing within three business days of receipt.  The RCR or its designee, within six business days of the acknowledgement of receipt, shall provide Plaintiffs with a written description of the proposed resolution of or response to the concern or question, if possible, or provide a status update on efforts to resolve or respond to the concern or question.  Additional time may be required to resolve a concern or question.  In all instances, the RCR will make a good faith effort to resolve the concern or question as quickly as possible and will timely report to Plaintiffs the ultimate resolution of the concern or question.  In addition, the RCR shall provide status reports, orally or in writing, to Plaintiffs regarding such a concern or question promptly after such status reports are reasonably requested by Plaintiffs in writing.  For the purposes of this Paragraph 28(c), "in writing" shall include electronic mail.  The communications required by this Paragraph 28(c) shall be exempt from the requirements of Section XIII of this Consent Decree.

d.    Defendant will notify EPA, the Corps and the State in writing within 30 days of its choice(s) for RCR and FCR, and within 30 days after any change to a RCR and/or an FCR.

29.    Compliance Protocol.  Within 60 days of the entry of this Consent Decree, and for five years thereafter, Defendant shall implement the Compliance Protocol set forth in this

21

Paragraph ("Compliance Protocol") at all OG Facilities other than those subject to

Paragraph 30 to ensure compliance with Section 404 of the CWA and the West Virginia

WPCA, Chapter 22, Article 11, Section 1 *et seq*.  Restoration activities required pursuant

to Appendix B are not subject to this Paragraph 29.  The Compliance Protocol requires

the following steps at applicable OG Facilities other than those subject to Paragraph 30:

      a.      Prior to the initiation of any new land-disturbing activities, except for

repair or maintenance to original project configuration (i.e., repair of slips, digging to add

or replace a flowline, grading of an existing road, leveling or replacing gravel on an

existing pad, cleaning out ditchlines, collection of materials to respond to a slip or spill,

or other such activities), Defendant shall use a Qualified Wetlands Professional to

provide an assessment ("Pre-Disturbance Assessment") regarding the potential presence

of all aquatic resources (including but not limited to streams and wetlands) within the

outer Limits of Disturbance and within 300 horizontal feet of the outer Limits of

Disturbance surrounding the proposed operation of the existing or proposed OG Facility;

provided that for linear projects, all aquatic resources within 150 feet of the Limits of

Disturbance of the project shall be assessed as set forth above.  Data reviewed in making

such assessment must include review of NRCS Soil Survey Geographic Database for the

presence of mapped hydric soils, the U.S. Fish & Wildlife Service National Wetlands

Inventory mapping, the 1:48,000 Scale WV SAMB Stream Layer available at

http://wvgis.wvu.edu/data/dataset.php?ID=265, and the USGS National Hydrography

Dataset.  In addition, a Pre-Disturbance Assessment must include an analysis of

reasonably available aerial photographs and topographic features, such as contours, to

identify small streams not identified in the WV SAMB Stream Layer or the USGS

National Hydrography Dataset.  In addition, unless otherwise agreed to by the Parties, the Qualified Wetlands Professional shall visit the existing or proposed OG Facility to assess the potential presence of aquatic resources within the outer Limits of Disturbance and within 150 horizontal feet of the outer Limits of Disturbance surrounding the proposed operation of the existing or proposed OG Facility.  If the potential presence of an aquatic resource is indicated by the data reviewed, but the Qualified Wetlands Professional determines that no potential aquatic resources are present based on the on-site inspection, then the Qualified Wetlands Professional must document in the Pre-Disturbance Assessment how that determination was made.

b.      To the extent that a Pre-Disturbance Assessment identifies potential impacts to aquatic resources (including but not limited to streams and wetlands) within the footprint of and/or within 300 horizontal feet of the outer Limits of Disturbance surrounding the proposed operation of the existing or proposed OG Facility and Defendant does not elect to pursue an alternative for the construction activity that would involve no impacts to aquatic resources based upon a Pre-Disturbance Assessment, Defendant shall:

(i)      In the event that an individual permit or the grant of a waiver allowing Defendant to exceed the limits in the Nationwide Permit is required, prepare documentation of the consideration of alternative locations for the existing or proposed OG Facility that would involve fewer impacts to aquatic resources, and documentation of why such alternative locations were not selected, including, as applicable, why such alternatives were not deemed practicable as that term is defined at 40 C.F.R. § 230.3(l);

23

(ii)     Prepare documentation that the design of the existing or proposed OG Facility avoids and minimizes, to the maximum extent practicable, impacts to aquatic resources within the footprint of and/or within 150 horizontal feet of the outer Limits of Disturbance surrounding the proposed operation of the existing or proposed OG Facility;

(iii)     Prior to any earthmoving, clearly mark, in accordance with industry standards, the aquatic resource(s) within the footprint of and/or within 150 horizontal feet of the outer Limits of Disturbance surrounding the proposed operation of the existing or proposed OG Facility.  In the event that there is an aquatic resource located within 25 feet of the outer Limits of Disturbance, Defendant shall, in addition to clear marking, install silt fencing and other necessary erosion control measures to protect such aquatic resource.  Defendant will maintain such fencing and erosion control measures until the Site is restored in accordance with the applicable WVDEP permit or manual.

(iv)     Implement construction techniques that are certified by a registered professional engineer as consistent with sound engineering practices, and that ensure rapid stabilization of disturbed earth as soon as practicable, unless more rapid stabilization is required by state law, including but not limited to:

1.     ensuring construction of earthen fill slopes of a slope no steeper than 2:1, except where engineered methods can accommodate steeper slopes and such methods are approved by the WVDEP;

2.     providing for temporary and permanent seed planting (including the use of native, non-invasive species);

24

3.      applying erosion and sediment controls consistent with the most recent version of the State of West Virginia's Erosion & Sediment Control Best Management Practice Manual;

4.       ensuring that the design and installation of culverts is certified by a registered professional engineer as meeting all relevant standards; and

5.      ensuring that the culverts are installed in accordance with the general, Specific Regional, and Special conditions of Nationwide Permit 14, and either span or are appropriately countersunk below the streambed.

(v)      Submit prior to construction to the applicable regulatory agency any necessary permit application(s) pursuant to the West Virginia WPCA, and any necessary permit application(s) pursuant to Section 404 of the CWA for the discharge of dredged and/or fill material, including but not limited to individual permits or any applicable Nationwide Permits for which a preconstruction notification is required.  This provision does not excuse Defendant from obtaining any other permits or authorizations that may be required under federal, state, or local law;

(vi)      Retain for inspection upon request by the Plaintiffs at Defendant's offices in Denver, Colorado, the results of the Pre-Disturbance Assessment, including

•      Name of the facility;

•      Location of the facility, including latitude and longitude;

•      Owner/operator of the facility or site;

25

- Name, nature, and condition of receiving stream(s), including the eight-digit Hydrologic Unit Code;

- The results of all inspections;

(vii)   Comply with the advance notification requirements of this Consent Decree, set forth in Paragraph 31 below and any other notifications required by applicable rules, regulations, and permit(s);

(viii)   Until all permits and/or authorizations for the discharge of dredged and/or fill material are received from the Corps and/or the State, delay any land-disturbing activities that could impact the aquatic resource(s), and any land disturbing activities that may be subject to statutes or regulations made applicable through Corps' and/or State permitting processes, except that the parties agree that any tree cutting that remains above the ground's surface while leaving the rooted stumps in place is not a land disturbing activity;

(ix)   Stabilize disturbed areas, and restore any affected aquatic resources, as soon as practicable at such OG Facility insofar as such stabilization and restoration is not inconsistent with the terms of any West Virginia WPCA permit or CWA Section 404 permit authorizing the discharge of dredged and/or fill material at the OG facility.  Defendant shall also restore to their pre-existing grades, dimensions, and slopes all aquatic resources for which temporary impacts are proposed; and

(x)   Maintain all records relating to such OG Facility for five years after the completion of the Pre-Disturbance Assessment, and transfer such records to the next leaseholder or property owner in the event that a facility is sold or the

lease terminates within the five-year period.  This obligation is in addition to, and does not alter, the record retention obligations under Section X of this Consent Decree.

c.      Whenever Defendant submits mapping of aquatic resources to the Corps or the State in connection with seeking a jurisdictional determination or a permit or other authorization to discharge dredged or fill material at an OG Facility, Defendant shall, within three business days of the submission, notify and make available to EPA electronic copies of all such mapping information in an agreed-to electronic format where that information can be viewed by EPA for a period of 30 days or thereafter by request via email.

d.      Defendant shall incorporate the Compliance Protocol set forth in this Paragraph 29 into Defendant's standard operating procedures, including any applicable manuals or other documentation setting forth such procedures, ensure that the Compliance Protocol is provided to each FCR, and ensure that Defendant's contractors are trained in the Compliance Protocol as provided in this Paragraph.  Failure to implement the Compliance Protocol during the life of this Consent Decree shall subject Defendant to stipulated penalties set forth in Section VIII.

e.      Nothing in this Paragraph 29 shall be interpreted to relieve Defendant of the requirements of the CWA or the West Virginia WPCA, including the requirement to obtain authorization under Section 404 of the CWA for the discharge of dredged or fill material into waters of the United States.  Moreover, except for the claims resolved under Paragraph 7 of this Consent Decree, Plaintiffs reserve in full their authority to institute a civil, criminal, or administrative action pursuant to the CWA and/or the West Virginia

WPCA for any unauthorized discharge of dredged or fill material.

30. Compliance Protocol Exception.  Paragraph 29 shall not apply to OG facilities for which Defendant requested a delineation prior to October 15, 2017, except that, Defendant shall be required to implement the following parts of Paragraph 29:  b(iii), b(iv), b(v), b(vi), b(viii), b(ix), d, and e.

31. <u>Advance Notification</u>.  For a period of twelve months after entry of this Consent Decree, Defendant shall, prior to undertaking any construction in West Virginia that may involve discharges of dredged or fill material into waters of the United States that Defendant believes would qualify for Nationwide Permit 12 and/or 14 under the CWA but would not otherwise require submission of preconstruction notification, submit advance notice in accordance with Nationwide Permit General Condition 32 to the Corps of Engineers with copies to EPA at the following electronic address:  witman.timothy@epa.gov.

## VII.   REPORTING REQUIREMENTS

32. Within 90 days after the entry of this Consent Decree and on or before each April 30 and October 31 until termination of this Consent Decree, Defendant shall provide the United States and the State with a written status report detailing Defendant's progress toward completing all tasks required by this Consent Decree and setting forth each of the tasks that will be required before the next report is due and the completion date for such tasks. The status report shall be sent to the addresses specified in Section XII of this Consent Decree.  If the required task has been completed, the notice shall specify the date when it was completed.  If the required task has not been completed, or was completed after the deadline, then the notice shall explain the reasons for any delay in completion beyond the scheduled time for such completion required by the Consent Decree.

33.   For all status reports submitted to the United States pursuant to Paragraph 32 of this Consent Decree, Defendant shall, by signature of a senior management official designated to act on behalf of Defendant, certify as follows:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering such information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

34.   Compliance with the reporting requirements of this Consent Decree does not relieve Defendant of any reporting obligations required by the Clean Water Act or its implementing regulations, or by any other federal, state or local law, regulation, permit or other requirement.

## VIII.   STIPULATED PENALTIES

35.   Defendant shall be liable for stipulated penalties to the United States and the State for violations of this Consent Decree as specified below, unless excused under Section XI ("Force Majeure"). A violation includes failing to perform any obligation required by the terms of this Consent Decree according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

36.   Late Payment of Civil Penalty - If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree ("Civil Penalty") when due, Defendant shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late.

37.   Compliance Milestones: The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Sections V ("Restoration,

29

Mitigation and Preservation"), and VI ("Compliance Requirements"):

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,000 | 1st through 30th Day |
| $2,000 | 31st through 60th Day |
| $3,000 | 61st Day and beyond |

38.   Reporting Requirements: The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Section VII (Reporting Requirements) :

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $500 | 1st through 30th Day |
| $1,000 | 31st through 60th Day |
| $1,500 | 61st Day and beyond |

39.   Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

40.   Defendant shall pay any stipulated penalty within 30 days of receiving a written demand from either Plaintiff.  The Plaintiff making the demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff and to the Regional Hearing Clerk, EPA Region 3 at the address listed in Section XII, and to the Cincinnati Finance Center at the address listed in Paragraph 18 by electronic or first-class mail.  Defendant shall pay 50 percent of the total stipulated penalty amount to the United States and 50 percent to the State.

30

41.     Either the United States or the State may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties due to it under this Consent Decree.

42.     Any disputes concerning the amount of stipulated penalties, or the underlying violation that gives rise to the stipulated penalties, that cannot be resolved by the parties pursuant to the Dispute Resolution provisions in Section X and/or the Force Majeure provisions in Section XI shall be resolved upon motion to this Court as provided in Section X ("Dispute Resolution").

43.     Stipulated penalties shall continue to accrue during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of the EPA, in consultation with the WVDEP, that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, 50 percent of the total amount to the United States and 50 percent to the State within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.     To the extent Defendant demonstrates to the Court that a delay or other non-compliance was due to a Force Majeure event (as defined in Section XI, below) or otherwise prevails on the disputed issue, Defendant shall not be obligated to pay the stipulated penalties and interest for that delay or non-compliance.

    d.      If any Party appeals the Court's decision, Defendant shall pay all accrued penalties determined to be owed, together with interest, within 15 days of receiving the final appellate court decision.

    e.      Defendant shall pay stipulated penalties owing to the United States and the State in the manner set forth in Section IV ("Civil Penalty"), except that the ETF forms and transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

44.    If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree on time, Defendant shall be liable for interest on such penalties, as provided in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

45.    Subject to the provisions of Section III of this Consent Decree ("Scope and Effect of Consent Decree"), the stipulated penalties provided for above shall be in addition to any other rights, remedies, or sanctions available to the United States and the State for Defendant's violation of this Consent Decree or applicable law.

## IX.  RETENTION OF RECORDS AND INSPECTIONS

46.    During the existence of this Consent Decree, and until five years after the termination of this Consent Decree, Defendant shall preserve and retain all records, documents, and information now in its possession, custody or control or which come into its possession, custody or control that relate in any manner to the performance of the tasks in this Consent Decree (including all Appendices), regardless of any corporate retention policy to the contrary.  Defendant shall also instruct its contractors, agents, successors and

assigns to preserve all documents, records, and information of whatever kind, nature or description relating to the performance of the tasks in this Consent Decree during the existence of this Consent Decree, and until five years after the termination of this Consent Decree.

47.   At the conclusion of the document retention period specified in Paragraph 46 and continuing for two years thereafter, Defendant shall notify the United States and the State at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States or the State, Defendant shall deliver any such records or documents to the requesting Plaintiff.  If the United States or the State does not request delivery of such records or documents within the 90-day period, then the records or documents may be destroyed.  Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the United States with the following:

- The title of the document, record, or information;

- The date of the document, record, or information;

- The name and title of the author of the document, record, or information;

- The name and title of each addressee and recipient;

- A description of the subject of the document, record, or information; and

- The privilege asserted by Defendant.

However, no documents, reports or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged.

48. During the document retention period specified in Paragraph 46, the United States may inspect and review any records required to be kept under the terms and conditions of this Consent Decree and the CWA, and Defendant shall produce such records for inspection by the United States at a reasonable time and location.

49. <u>Inspections.</u>

a. Until termination of this Consent Decree, the United States, WVDEP, and their authorized representatives and contractors may, upon reasonable notice and at all reasonable times, and in compliance with agency and Defendant's safety protocols, enter any of Defendant's OG Facilities and any sites where Defendant is performing restoration or mitigation pursuant to Section V of this Consent Decree, to:

- Monitor the activities required by this Consent Decree;

- Verify any data or information submitted to the United States or the State;

- Obtain samples as permitted by law and

- Inspect and evaluate Defendant's restoration, mitigation, and/or preservation activities.

b. This paragraph of the Consent Decree is in addition to, and in no way limits or otherwise affects, the statutory authorities of the United States or WVDEP to conduct inspections, to require monitoring and to obtain information from Defendant as authorized by law.

## X.    DISPUTE RESOLUTION

50.   Unless otherwise expressly provided for in this Consent Decree, the Dispute Resolution procedures of this Section XI shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Consent Decree.

51.   Any dispute that arises with respect to the meaning or requirements of this Consent Decree shall be, in the first instance, the subject of informal negotiations between the parties to attempt to resolve such dispute.  The period for informal negotiations shall commence upon written notice by one party to the other that a dispute exists and that the party is invoking the dispute resolution process to address the dispute.  The period for informal negotiations shall not extend beyond 30 days, unless agreed to in writing by the parties to the dispute.  If a dispute between the United States, and/or the State, and Defendant cannot be resolved by informal negotiations, then the position advanced by the United States following consultation with the State shall be considered binding unless, within 14 days after the end of the informal negotiations period, Defendant files a motion with the Court seeking resolution of the dispute.  The motion shall set forth the nature of the dispute and a proposal for its resolution.  The United States, in consultation with the State, shall have 30 days to respond to the motion and propose an alternate resolution.  In resolving any such dispute, Defendant shall bear the burden of proving by a preponderance of the evidence that the United States' position is not in accordance with the terms and conditions of this Consent Decree and the objectives of the CWA (and the

West Virginia WPCA, as applicable), and that Defendant's position will achieve compliance with the terms and conditions of this Consent Decree, the CWA and the West Virginia WPCA.

52.   If the United States or the State believes that a dispute is not a good faith dispute, or that a delay would pose or increase a threat of harm to the public or the environment, the United States or the State may move the Court for a resolution of the dispute prior to the expiration of the 30-day period for informal negotiations.  Defendant shall have 14 days to respond to the motion and propose an alternate resolution.  In resolving any such dispute, Defendant shall bear the burden of proving by a preponderance of the evidence that the United States' position is not in accordance with this Consent Decree and the objectives of the CWA and the WPCA, as applicable, and that Defendant's position will achieve compliance with the terms and conditions of this Consent Decree, the CWA and the West Virginia WPCA.

53.   The filing of a motion asking the Court to resolve a dispute shall not extend or postpone any obligation of Defendant under this Consent Decree, except as provided in Section VIII, above, regarding payment of stipulated penalties.

XI.   FORCE MAJEURE

54.   Defendant shall perform the actions required under this Decree within the time limits set forth or approved herein, unless the performance is prevented or delayed solely by events which constitute a Force Majeure event, or otherwise agreed to in writing by the United States, the State and Defendant.  A Force Majeure event is defined as any event arising from causes beyond the control of Defendant, including its employees, agents, consultants and contractors, which could not be overcome by due diligence and which delays or prevents the performance of an action

36

required by this Consent Decree within the specified time period.  A Force Majeure event does not include, *inter alia*, increased costs of performance, changed economic circumstances, changed labor relations, normal precipitation or climate events, changed circumstances arising out of the sale, lease or other transfer or conveyance of title or ownership or possession of a site, or failure to obtain federal, state or local permits, except for circumstances that fall under 33 C.F.R. § 325.2(e)(4).

55.    If Defendant believes that a Force Majeure event has affected its ability to perform any action required under this Consent Decree, Defendant shall notify the United States and the State in writing within 10 calendar days after the event at the addresses listed in Section XII ("Notices and Submissions"), below.  Such notice shall include a discussion of:

- what action has been affected;

- the specific cause(s) of the delay;

- the length or estimated duration of the delay; and

- any measures taken or planned by Defendant to prevent or minimize the delay and a schedule for the implementation of such measures.

Defendant may also provide to the United States and the State any additional information it deems appropriate to support its conclusion that a Force Majeure event has affected its ability to perform an action required under this Consent Decree.  Failure to provide timely and complete notification to the United States and the State shall constitute a waiver of any claim of Force Majeure as to the event in question.

56.    If the United States, after a reasonable opportunity for consultation with the State, determines that the conditions constitute a Force Majeure event, then the deadline for the

affected action shall be extended by the amount of time of the delay caused by the Force Majeure event and/or any such other date as agreed upon in writing by the parties. Defendant shall coordinate with the United States and the State to determine when to begin or resume the operations affected by any Force Majeure event.

57. If the parties are unable to agree whether the conditions constitute a Force Majeure event, or whether the length of time for fulfilling the provision of the Consent Decree at issue should be extended, any party may seek a resolution of the dispute under the procedures in Section X ("Dispute Resolution") of this Consent Decree.

58. Defendant shall bear the burden of proving by a preponderance of the evidence:

      a. That the noncompliance at issue was caused by circumstances entirely beyond the control of Defendant, and any entity controlled by Defendant, including its employees, agents, consultants and contractors, which could not be overcome by due diligence and which delayed or prevented the performance of the affected action;

      b. That Defendant or any entity controlled by Defendant could not reasonably have foreseen and prevented such noncompliance; and

      c. The number of days of noncompliance that were caused by such circumstances.

## XII.   NOTICES AND SUBMISSIONS

59. All notices and communications required under this Consent Decree shall be made to the parties through each of the following persons and addresses:

      TO EPA:

Pamela J. Lazos, Mail Code 3RC20
Senior Assistant Regional Counsel
United States Environmental Protection Agency Region III
1650 Arch St.
Philadelphia, PA 19103-2029

Lisa Donahue, Mail Code 3ED31
United States Environmental Protection Agency Region III
1650 Arch St.
Philadelphia, PA 19103-2029

Regional Hearing Clerk, Mail Code 3RC00
United States Environmental Protection Agency Region III
1650 Arch Street
Philadelphia, PA 19103-2029

TO THE DEPARTMENT OF JUSTICE:

Patrick R. Jacobi
Trial Attorney
Environment and Natural Resources Division
U.S. Department of Justice
Denver Place Building
999 18th Street
Suite 370 – South Terrace
Denver, CO  80202

Chloe H. Kolman
Trial Attorney
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044

TO THE CORPS:

Dana M. Adipietro
Assistant District Counsel
U.S. Army Corps of Engineers
Pittsburgh District
1000 Liberty Ave., 22nd Floor
Pittsburgh, PA  15222

Jon T. Coleman
Chief, Southern Section, Regulatory Branch
U.S. Army Corps of Engineers

Pittsburgh District
1000 Liberty Ave., 22nd Floor
Pittsburgh, PA  15222

Paul J. Loftus
Deputy District Counsel
U.S. Army Corps of Engineers
Huntington District
502 8th Street
Huntington, WV 25701

Lee A. Robinette
Chief, Energy Resource Branch
U.S. Army Corps of Engineers
Huntington District
502 8th Street
Huntington, WV 25701

TO WVDEP:

Chief Inspector
Environmental Enforcement
West Virginia Department of Environmental Quality
601 57th Street, SE
Charleston, WV  25304

Chief
Office of Oil and Gas
West Virginia Department of Environmental Quality
601 57th Street, SE
Charleston, WV  25304

TO DEFENDANT:

Al Schopp
Regional Senior Vice President and Chief Administrative Officer
Antero Resources Corporation
1615 Wynkoop Street
Denver, CO  80202

Hank Lawrence
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330

### XIII.   COSTS OF SUIT

60.   Each party to this Consent Decree shall bear its own costs and attorneys' fees in this

action, except that the United States and/or the State shall be entitled to collect the costs

(including attorney's fees) incurred in any action necessary to enforce this Consent

Decree or to collect any portion of the civil penalty or any stipulated penalties due, but

not paid by Defendant.

### XIV.   PUBLIC COMMENT

61.   The parties acknowledge that after the lodging and before the entry of this Consent

Decree, final approval by the United States and the State is subject to the requirements of

28 C.F.R. § 50.7, and the West Virginia Code of State Rules, C.S.R. § 47-10-16.2.c,

which provide for public notice and comment.  The United States reserves the right to

withhold or withdraw its consent to the entry of this Consent Decree if the comments

received disclose facts which lead the United States to conclude that the proposed

consent judgment is inappropriate, improper, or inadequate.  Defendant agrees not to

withdraw from, oppose entry of, or to challenge any provision of this Consent Decree

unless the United States has notified Defendant in writing that it no longer supports entry

of the Consent Decree.

### XV.   CONTINUING JURISDICTION OF THE COURT

62.   This Court shall retain jurisdiction over this action in order to enforce or modify the

Consent Decree consistent with applicable law or to resolve all disputes arising hereunder

as may be necessary or appropriate for construction or execution of this Consent Decree.

### XVI.   ENTRY AND MODIFICATION

63.   Upon its entry by the Court, this Consent Decree shall have the force and effect of a final

judgment. Any material modification of this Consent Decree shall be in writing, and shall not take effect unless signed by the United States, the State, and Defendant and approved by the Court, except that deadlines for the completion of tasks required by Sections V and VI may be modified by written agreement of all parties.

## XVII.   EFFECTIVE DATE

64.   The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVIII. TERMINATION

65.   Except for Paragraphs 22, 24, 46, 47, and the post-restoration monitoring requirements identified in Appendix B, Paragraph II, this Consent Decree may be terminated through either of the following procedures:

a.   After Defendant has: (i) completed the tasks contained in the work plans established pursuant to Appendix B (except for the post-restoration monitoring requirements identified in Appendix B, Paragraph II); (ii) completed the requirements contained in Paragraph 16 in Section IV ("Civil Penalty"), Paragraphs 21, 23, and 25 in Section V ("Restoration, Mitigation and Preservation"), and Paragraphs 26(a), 29, and 30 in Section VI ("Compliance Assurance Program") of this Consent Decree; (iii) has paid any accrued stipulated penalties as required by Section VIII this Consent Decree; and (iv) has complied with all other requirements of this Consent Decree; Defendant may serve upon the United States and the State a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation. If the United States and the State agree that the Consent Decree may be terminated, the

Parties shall submit, for the Court's approval, a joint stipulation, terminating the Decree. If the United States and/or the State do not agree that the Decree may be terminated, the United States and/or the State shall provide their reason for not agreeing to submit a joint stipulation.  Defendant may submit a motion to the Court asking for termination of the Consent Decree without invoking Dispute Resolution under Section X of this Consent Decree; provided, however, the Defendant shall not submit such motion until 90 days after service of its Request for Termination on the United States and the State, and Defendant shall bear the burden of proving by a preponderance of the evidence that Defendant's position is in accordance with the terms and conditions of this Consent Decree and the requirements of the CWA (and the West Virginia WPCA, as applicable).

   b.      Defendant, the United States, and the State may at any time make a joint motion to the Court for termination of this Decree or any portion of it.

## XIX.   SIGNATORIES/SERVICE

66.   Each of the undersigned certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

67.   This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX.   APPENDICES

68.   The following appendices are attached to and part of this Consent Decree:

Appendix A:  Site List
Appendix B:  Work Plans and Specifications for Restoration and Mitigation Projects
Appendix C:  Sample Conservation Easement
Appendix D:  Sample Deed Restriction
Appendix E:  Mitigation Site

IT IS SO ORDERED.

Dated and entered this ___22nd___ day of ___May___, 2019.


Irene M. Keeley

United States District Judge

ON BEHALF OF DEFENDANT, ANTERO RESOURCES CORPORATION:

Dated: 11/28/18

Alvyn A. Schopp
Regional Senior Vice President and Chief Administrative Officer
ANTERO RESOURCES CORPORATION

46

ON BEHALF OF THE UNITED STATES:

Dated: February 10, 2019

Patrick R. Jacobi
Chloe H. Kolman
Trial Attorneys
Environment and Natural Resources Division
Environmental Defense Section
U.S. Department of Justice

U.S. ENVIRONMENTAL PROTECTION AGENCY


_____          Dated:_____

SUSAN PARKER BODINE
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency


_____          Dated:___12-20-2018___
COSMO SERVIDIO
Regional Administrator
U.S. Environmental Protection Agency, Region III


_____          Dated:___12/12/18___
MARY COE
Regional Counsel
U.S. Environmental Protection Agency, Region III

Pamela J. Lazos
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency, Region III

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY (OECA):

27 DEC 2018
Date

for

SUSAN PARKER BODINE
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency


12/26/18
Date

For

ROSEMARIE KELLEY
Acting Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency


12/26/18
Date

MARK POLLINS
Director, Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency


12/21/18
Date

MELISSA K. RAACK
Attorney-Advisor, Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance

ON BEHALF OF THE WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL
PROTECTION:

_____   Dated: _1-31-19_

HAROLD WARD
Acting Director
Division of Water and Waste Management
West Virginia Department of Environmental Protection
601 57th Street Southeast
Charleston, WV 25304
(304) 926-0499

_____   Dated: _1/31/19_

Scott Driver
Associate Attorney
West Virginia Department of Environmental Protection
601 57th Street Southeast
Charleston, WV 25304
(304) 926-0499

**Appendix A: Sites**

Five H
Ike & Mike Compressor Station
Jarvisville Compressor Station
Moss West/East
Cunningham
Morris
Sperry 2
Neva Ritter
Ross
Williams 10
Pike Fork Compressor Station
Lowe
O. Rice (includes pipeline)
Matthey (includes Salem Compressor Station)
Mary Post
Hurst
Hustead
Davis 1
Clarksburg Compressor Station
Johnson
Rossco
Matthews
Hill
Williams 9
Terry Snider
Nash
Stewart
Hamilton
Primm
County Road 32/6 (associated with Bowyer)
Brushy Fork
North Canton Compressor Station

**Appendix B: Work Plans and Specifications for Restoration and Mitigation Projects**

This Appendix sets forth the procedures applicable to the restoration work to be undertaken by Antero Resources Corporation ("Defendant") pursuant to the Consent Decree among the United States of America, the State of West Virginia (by and through the West Virginia Department of Environmental Protection) and Defendant. This Appendix is incorporated into the Consent Decree.

The sites covered by this Work Plan (collectively, the "Restoration Sites") are:

| | | |
|---|---|---|
| Five H | Ike & Mike Compressor Station | Jarvisville Compressor Station |
| Moss West/East | Cunningham | Morris |
| Sperry 2 | Neva Ritter | Ross |
| Williams 10 | Pike Fork Compressor Station | Lowe |
| O. Rice | Matthey (includes Salem Compressor Station) | |
| Mary Post | Hurst | Hustead |
| Davis 1 | Clarksburg Compressor Station | Johnson |
| Rossco | Matthews | Hill |
| Williams 9 | Terry Snider | Nash |
| Stewart | Hamilton | Primm |
| County Road 32/6 (associated with Bowyer) | | Brushy Fork |
| North Canton Compressor Station | | |

## I.    Delineation Reports

For each Restoration Site for which a delineation report has not been approved by EPA, Defendant shall submit a pre-disturbance wetland and stream delineation ("Delineation Report") to the U.S. Environmental Protection Agency ("EPA") for review and approval. Each Delineation Report will identify any and all areas at the applicable Restoration Site that, prior to construction, were potentially jurisdictional streams or wetlands, and will show the extent of the waters. Defendant shall utilize a methodology for identifying wetlands and streams in disturbed and undisturbed areas consistent with methods accepted by the EPA and the U.S. Army Corps of Engineers ("Corps").

Defendant shall submit Delineation Reports for all Restoration Sites within 120 days of the entry of the Consent Decree. Delineation Reports submitted to and approved by EPA prior to the entry of the Consent Decree will satisfy this requirement.

After review of the Delineation Report, EPA will: a) approve the Report, in whole or in part; b) approve the Report upon specified conditions; c) disapprove the Report, in whole or in part; or d) any combination of the above.

If EPA disapproves all or part of a Delineation Report, Defendant shall, within 60 days of receipt of EPA's disapproval, address the reasons for disapproval and resubmit the Delineation Report for approval. If a Delineation Report submitted pursuant to this provision is disapproved in whole or in part three times or more, EPA, in consultation with the Corps and the State, may

itself correct the deficiencies in the Report, subject to Defendant's right to invoke Dispute Resolution pursuant to Section X of this Consent Decree.

## II.    Restoration Plans and Mitigation Plans

Within 120 days of EPA's approval of each Delineation Report, Defendant shall submit a detailed Restoration Plan for the applicable Restoration Site to EPA for approval.  The Restoration Plan must (a) be designed to restore the Restoration Site to approximate pre-disturbance conditions with regard to topography, structure, and hydrologic flow where practicable and consistent with the definition of restoration found in 40 C.F.R. § 230.92; (b) include a schedule for implementation; (c) include compensation for temporal impacts to streams and wetlands using the West Virginia Stream and Wetland Valuation Metric ("WVSWVM") to determine the appropriate amount of mitigation needed to offset permanent and temporal losses to aquatic resources; (d) ensure that restored areas are stabilized so as to avoid landslides or slips, (e) utilize only native West Virginia species for planting; (f) incorporate quantitative performance measures; and (g) include a post-restoration monitoring plan for a period of at least five years or until EPA agrees in writing that restoration has been successful.

After review of the Restoration Plan, EPA will:  a) approve the Plan, in whole or in part; b) approve the Plan upon specified conditions; c) disapprove the Plan, in whole or in part; or d) any combination of the above.

If EPA disapproves all or part of a Restoration Plan, Defendant shall, within 60 days of receipt of EPA's disapproval, address the reasons for disapproval and resubmit the Restoration Plan for approval.  If a Restoration Plan submitted pursuant to this provision is disapproved in whole or in part three times or more, EPA, in consultation with the Corps and the State, may itself correct the deficiencies in the Plan and require restoration in accordance with the plan developed by EPA, subject to Defendant's right to invoke Dispute Resolution pursuant to Section X of this Consent Decree.

In the event that the physical, chemical, and biological functions of the impacted aquatic resources cannot be fully restored at any Restoration Site due to lack of access or for any other reason, including agreement by the parties that such restoration is impracticable, Defendant shall notify EPA and develop and submit to EPA a Mitigation Plan.  The Mitigation Plan must be submitted to EPA as part of the Restoration Plan or within 60 days of Defendant determining that such Mitigation Plan must be submitted pursuant to this Paragraph.  The Mitigation Plan must use WVSWVM to determine the appropriate amount of mitigation needed to compensate for all unrestored impacted resources.  The Mitigation Plan must provide long-term protection for mitigation areas via a conservation easement, deed restriction, or other appropriate instrument.  A single Mitigation Plan may be used to compensate for unrestored impacts at multiple sites within an 8-digit hydrologic unit code ("HUC") watershed, including the Mitigation Site identified in Appendix E.

After review of Defendant's Mitigation Plan, EPA will:  a) approve the Plan, in whole or in part; b) approve Plan upon specified conditions; c) disapprove the Plan, in whole or in part, or

d) any combination of the above.  EPA may disapprove the Mitigation Plan, in whole or in part, based on EPA's determination that the impacted aquatic resources can be fully restored. If EPA disapproves all or part of a Mitigation Plan, Defendant shall, within 60 days of receipt of EPA's disapproval, address the reasons for disapproval and resubmit the Mitigation Plan for approval.  If a Mitigation Plan submitted pursuant to this provision is disapproved in whole or in part three times or more, EPA, in consultation with the Corps and the State, may itself correct the deficiencies in the Plan and require mitigation in accordance with a plan developed by EPA, subject to Defendant's right to invoke Dispute Resolution pursuant to Section X of this Consent Decree.

## III.    Restoration and Mitigation

Upon approval of a Restoration Plan (either with or without conditions or modifications by EPA), the Restoration Plan is incorporated into this Appendix B, and Defendant shall implement the Plan as approved or modified by EPA.  Upon approval of a Mitigation Plan (either with or without conditions or modifications by EPA), the Mitigation Plan is incorporated into this Appendix B, and Defendant shall implement the Plan as approved or modified by EPA. Restoration and mitigation work at each Restoration Site shall be executed in accordance with the approved schedule.

## IV.    Communications

All other correspondence related to this Work Plan should be submitted to the EPA representatives to whom communications are to be made pursuant to Paragraph 59 of the Consent Decree.

## V.    Extensions of the Timeframes Above

Defendant shall perform the actions required by this Work Plan within the time limits set forth herein.  EPA recognizes that delineation and restoration activities may be delayed because of unanticipated seasonal and weather conditions, issues relating to landowner access, and leases and other transfers or conveyances of possession of Restoration Sites.  Extension requests based on these issues will not be unreasonably denied.

## VI.    Access to Third-Party Sites

a.    If any Site or Restoration Site is owned or controlled by persons other than Defendant, Defendant shall use best efforts to secure from such persons an agreement to provide access to the Site for Defendant, the United States, the State, and their representatives, contractors, and subcontractors, to conduct any activity pursuant to the Consent Decree including, but not limited to, the activities set forth in this Work Plan and Paragraph 21 of the Consent Decree.  "Best efforts" for the purposes of this Paragraph VI includes efforts commenced no later than 30 days after EPA's approval of a Restoration Plan or development of a Restoration Plan pursuant to Section III of this Work Plan, or no later than 30 days after entry of this Consent Decree for Sites with previously-approved restoration plans, and the offer of payment of a reasonable sum of money to obtain access.

b.      If, within 90 days of EPA's approval of a Restoration Plan or development of a Restoration Plan pursuant to Section III of this Work Plan, or within 90 days after entry of this Consent Decree for Sites with previously-approved restoration plans, Defendant has not obtained an agreement to provide access as described above, Defendant shall promptly notify Plaintiffs in writing at the addresses set forth in Section XIII of the Consent Decree, and shall include in that notification a summary of the steps that Defendant has taken to attempt to comply with this Paragraph VI.  The United States may, in its unreviewable discretion, assist Defendant in obtaining access.  If Defendant has used best efforts and access is not obtained by Defendant or the United States for any reason, and Defendant is unable to complete its obligations under this Consent Decree, then Defendant shall, consistent with Section II of this Work Plan, provide compensatory mitigation to off-set the loss of any areas that could not be restored due to lack of access, provided that such compensatory mitigation shall be consistent with applicable EPA and Corps regulations and guidance.

**Appendix C:  Model Conservation Easement**

Prepared by: [AUTHOR]

**GRANT OF CONSERVATION EASEMENT**

This Grant of Conservation Easement is made this [DATE] day of [MONTH], 201[X], by [GRANTOR], whose address is [ADDRESS], located in [CITY], [COUNTY], [STATE], hereinafter referred to as "Grantor," in favor of the [GRANTEE], hereinafter referred to as "Grantee," with the United States Environmental Protection Agency ("EPA"), the West Virginia Department of Environmental Protection ("WVDEP") and the United States Army Corps of Engineers ("USACE") as Third-Party Beneficiaries with rights as provided in this Conservation Easement, pursuant to the West Virginia Code, Chapter 20, Article 12, Conservation and Preservation Easements Act, § 20-12-2 et. seq.

**WITNESSETH:**

**WHEREAS**, Grantor is the owner of certain real property located in the [PROPERTY TITLE] (hereinafter "the Property"), and the Property is also described in a deed of record in the office of the Clerk of the County Commission, [COUNTY] at Deed Book [BOOK], Page [PAGE]; and

**WHEREAS**, that certain portion of the surface of the Property described on Exhibit A attached hereto (the "Conserved Area") possesses open space and natural values (collectively, "Conservation Values") of great importance to Grantor, the people of [COUNTY], and the people of the State of West Virginia, and all current and future generations of mankind; and

**WHEREAS**, the Legislature of the State of West Virginia has recognized the importance and significant public benefit of conservation and preservation easements in its ongoing efforts to protect the natural, historic, agricultural, open-space and scenic resources of the State of West Virginia; and

**WHEREAS**, Grantee qualifies as a "holder" pursuant to W. Va. Code § 20-12-3; and

**WHEREAS**, Grantor, having the authority to do so, intends to enter into this Conservation Restriction in order to grant to Grantee a Conservation Easement on the Property to restrict subsequent disturbance and/or development of the Conserved Area in perpetuity; and

**WHEREAS**, Grantee affirms that this Conservation Easement represents a unique and valuable asset to the quality of life in [COUNTY] and the state of West Virginia and that by the acceptance of this Conservation Easement that it will act in good faith to uphold the conservation easement and not seek to benefit from its conversion or elimination.  Grantee agrees by accepting this grant to honor the intentions of Grantor stated herein and to preserve and protect in

i

perpetuity the Conservation Values of the Conserved Area for the benefit of this generation and the generations to come in the future; and

**WHEREAS**, preservation of the Conserved Area is consistent with a central objective of a Consent Decree in the matter of [*Case name*], Civil Action No. _____ ("Antero CD"), Grantor and Grantee agree that USACE, EPA, and WVDEP, and their successor agencies (collectively "Third Parties"), are third-party beneficiaries under this conservation easement, except that nothing herein creates a property interest in the Federal Government or the State of West Virginia with regard to the Conserved Area;

**NOW THEREFORE**, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and the facts recited above and the terms, conditions and restrictions contained herein, Grantor hereby agrees that the Conserved Area shall be subject in perpetuity to the following conveyances, covenants and restrictions in favor of Grantee:

1. Grantor hereby conveys, transfers, assigns and grants to Grantee a Conservation Easement with respect to the Conserved Area.

2. This Grant of Conservation Easement shall be a burden upon and shall run with the Conserved Area, and shall bind Grantor, its successors and assigns, in perpetuity.

3. The following activities are prohibited in the Conserved Area, except as necessary for the control of alien invasive or noxious plant or animal species or as necessary to accomplish restoration and/or mitigation described in Paragraph 9:

   a. Removal, excavation, dredging, or disturbance of the surface;

   b. Dumping of, storage of, or filling with soil, rock, biological material, trash, ashes, garbage, waste, or other materials;

   c. Draining, impounding, or impairing the flow or circulation, or reducing the reach of waters, including wetlands; or any other discharge or activity requiring a permit under applicable clean water or water pollution control laws and regulations, as amended;

   d. Installation of structures;

   e. Placement of pavement or other impervious materials;

   f. Alteration of the existing pattern of vegetation through removal, destruction, or planting of vegetation;

   g. Except to the extent necessary to return the Conserved Area to a use consistent with its use prior to Antero Resources Appalachian Corporation's ("Antero") initial entry onto the Conserved Area, conversion of, or expansion into, any portion of the Conserved Area for use of agricultural, horticultural, aquacultural,

ii

silvicultural, livestock production, or grazing activities.  This prohibition also includes conversion from one type of these activities to another (e.g., from agricultural to silvicultural);

h.    The use of fertilizers, herbicides or pesticides;

i.    Removal, clearing, pruning, or mowing of live vegetation, including trees, unless Grantor demonstrates to Grantee that such removal will result in habitat enhancement or to prevent a safety hazard, and Grantor has received written approval of Grantee;

j.    The use of the Conserved Area to provide required open space for the development or subdivision of another property or to determine any other permissible residential, commercial or agricultural uses of another property; or any legal or de facto division, subdivision or portioning of the Conserved Area;

k.    Any other use of or activity in the Conserved Area that is inconsistent with the purpose of this Grant of Conservation Easement.

4.    Grantor shall record this Conservation Easement in the Land Records of the county or counties where the property is located within sixty (60) days of the effective date of this Conservation Easement.  Grantor shall provide Grantee, Antero and Third Parties with proof of recordation and give notice of this Grant of Conservation Easement to current record title holders of easements in the Conserved Area within thirty (30) days of recording by the County Clerk.

5.    Notwithstanding any provisions to the contrary, this Grant of Conservation Easement is subject to and subordinate to any existing and duly recorded rights with respect to the Conserved Area.  All structures, infrastructure, as well as all pre-existing easements or other duly recorded rights in the Conserved Area identifiable through a title search extending to documents placed of record within twenty (20) years prior to the date of this Grant of Conservation Easement, shall be indicated on Exhibit A, which is attached to this instrument and includes a copy of the most recent property deed for the Property and a legal description sufficient to identify the boundaries of the Conserved Area.  Grantor certifies to Grantee and Third Parties that to Grantor's actual knowledge, there are no previously granted easements existing in the Conserved Area that interfere or conflict with the purpose of this Grant of Conservation Easement.

6.    All mortgages and deeds of trust granted or entered into after the date hereof affecting the Conserved Area will be subordinate to the rights of Grantee under this Grant of Conservation Easement.

7.    Grantee, Antero and Third Parties shall have the right to:

a.    enter upon the Conserved Area for the purpose of inspecting the Conserved Area to determine compliance with the purposes and terms of this Grant of

iii

Conservation Easement, or for any other purpose authorized by this easement or by the Antero CD.  When practicable, such entry shall be upon prior reasonable notice to the property owner.  This right of entry is in addition to and does not limit any right of entry otherwise granted by Federal or State law;

b.    take any and all action within the Conserved Area necessary to address a situation that poses an immediate risk to health, life, property or the environment; and

c.    take any and all action within the Conserved Area required by Federal or State law or approved by the Third Parties.

8.    In the event of a breach of this Conservation Easement by Grantor or another party, Grantee and/or Third Parties shall notify Grantor of the breach.  If Grantor fails to take corrective action within 60 days of such notice, Grantee and/or Third Parties may undertake actions to effect such corrective action, including bringing a judicial action against any person(s) or entity(ies) violating or attempting to violate this Conservation Easement: provided, however, that no violation of this Conservation Easement shall result in a forfeiture or reversion of title.  In any enforcement action, an enforcing party shall be entitled to a complete restoration for any violation, as well as any other judicial remedy such as civil penalties.  The costs of breach, correction and/or restoration, including Grantee's and/or Third Parties' expenses, court costs, and attorney's fees, shall be paid by Grantor, provided Grantor is determined to be responsible for the breach. Enforcement shall be at the discretion of Grantee and/or Third Parties, and no omissions or delay in acting shall constitute a waiver of any enforcement right.  These rights are in addition to, and shall not limit, enforcement rights available under other provisions of law or equity, under any applicable permit or certification, or under the Antero CD.

9.    Antero and/or its contractors shall have the right to enter upon the Conserved Area for the purpose of performing any work required by a restoration or mitigation plan approved under the Antero CD, including construction, planting, maintenance, monitoring, long-term management, or any other restoration, enhancement, or mitigation work specified therein, provided such work is conducted in accordance with such approved plan.

10.    Grantor shall provide Grantee, Antero and Third Parties written notice of any transfer or change in ownership of, or of the execution of any subsequent easement affecting, any portion of the Conserved Area, including but not limited to the name and address of the new owner at least thirty (30) days prior to the transfer or change in ownership, or execution of such easement.

11.    Grantor agrees that the terms, conditions, restrictions and purposes of this Conservation Easement will be inserted in any subsequent deed, subdivision deed, lease, sub-lease or other legal instrument by which Grantor divests itself of any interest in any portion of the Conserved Area.  Notwithstanding the failure of Grantor to include the terms and restrictions of this instrument, it shall run with the land and be binding on all heirs, successors and assigns.

iv

12. Any notice, demand, request, consent, approval or communication under this Conservation Easement shall be sent by certified mail, return receipt requested or reliable overnight courier, addressed as follows:

To Grantor:

_____
_____
_____

To Grantee:

_____
_____
_____

To Antero:

_____
_____
_____

To Third Parties:

TO EPA:

Pamela J. Lazos
Senior Assistant Regional Counsel
Office of Regional Counsel
United States Environmental Protection Agency
Region III
MC 3RC20
1650 Arch St.
Philadelphia, PA  19103-2029

Associate Director, Office of Environmental Programs
Environmental Assessment and Innovation Division
United States Environmental Protection Agency
Region III
MC 3EA40
1650 Arch St.
Philadelphia, PA  19103-2029

TO THE CORPS:

Dana M. Adipietro

Assistant District Counsel
U.S. Army Corps of Engineers
Pittsburgh District
1000 Liberty Ave., 22nd Floor
Pittsburgh, PA  15222

Jon T. Coleman
Chief, Southern Section, Regulatory Branch
U.S. Army Corps of Engineers
Pittsburgh District
1000 Liberty Ave., 22nd Floor
Pittsburgh, PA  15222

Paul J. Loftus
Deputy District Counsel
U.S. Army Corps of Engineers
Huntington District
502 8th Street
Huntington, WV  25701

Lee A. Robinette
Chief, Energy Resource Branch
U.S. Army Corps of Engineers
Huntington District
502 8th Street
Huntington, WV 25701

TO WVDEP:

Chief Inspector
Environmental Enforcement
West Virginia Department of Environmental Protection
601 57th St.
Charleston, WV  25304

Chief
Office of Oil and Gas
West Virginia Department of Environmental Protection
601 57th St.
Charleston, WV  25304

13.    A party may change the address or person to whom notices to it are required to be given by notice given in the manner above provided.

14.     Grantor reserves to itself, its successors or assigns, all rights as owners of the Property, including the right to engage in all uses of the Conserved Area not inconsistent with the purpose and terms of this Conservation Easement and the right to manage the Conserved Area in accordance with the provisions of the West Virginia Conservation and Preservation Easements Act, West Virginia Code 20-12-1, *et seq.*

15.     This instrument conveys no additional right of access by the general public to any portion of the Property.

16.     Grantor shall be responsible for acts of its own negligence consistent with the provisions of the West Virginia Conservation and Preservation Easements Act, West Virginia Code 20-12-1, *et seq.*

17.     This Conservation Easement shall survive any merger of the fee and restriction interest in the Conserved Area.

18.     Upon prior written notice to Grantor, Antero and Third Parties, Grantee may assign its rights under this Grant of Conservation Easement to any qualified holder satisfying the definition set forth in West Virginia Code Chapter 20-12-3.  No assignment may be made unless Grantee, as a condition of such assignment, requires the assignee to carry out the conservation purposes and terms of this Grant of Conservation Easement.  If any such assignee ceases to exist, ceases to be a qualified holder under West Virginia Code Chapter 20-12-3, or abandons this easement or the rights and duties of enforcement herein set forth, or if proceedings are instituted for condemnation of this Grant of Conservation Easement, the Easement and rights of enforcement shall revert to Grantee. If Grantee shall be dissolved and if the terms of the dissolution fail to provide a successor, then the Court shall appoint a successor using the doctrine of *cy pres.*

19.     Taxes, Insurance.

    a.     Grantor shall keep Conserved Area free of any liens arising out of any work performed for, materials furnished to, or obligations incurred by Grantor.

    b.     Grantor agrees to pay any real estate taxes or other assessments levied on the Conserved Area.  If Grantor becomes delinquent in payment of said taxes or assessments, such that a lien against the land is created, Grantee, at its option, shall, after written notice to Grantor, have the right to purchase and acquire Grantor's interest in the Conserved Area or to take such other actions as may be necessary to protect Grantee's interest in the Conserved Area and to assure the continued enforceability of this Conservation Easement.

20.     Eminent Domain, Proceeds.

    a.     Whenever all or part of the Conserved Area is taken in the exercise of eminent domain so as to substantially abrogate the restrictions imposed by this Conservation Easement, the Grantor and Grantee shall join in appropriate actions

at the time of such taking to recover the full value of the taking, and all incidental and direct damages due to the taking.

b. In the event that all or a portion of this Conserved Area is sold, exchanged, or involuntarily converted following an extinguishment or the exercise of eminent domain, Grantee shall be entitled to the proceeds of such sale, exchange or conversion. Grantee shall use its share of the proceeds in a manner consistent with the purpose of this Grant of Conservation Easement, and in consultation with Third Parties.

21. Miscellaneous.

a. The laws of the State of West Virginia shall govern the interpretation and performance of this Conservation Easement.

b. If any provision of this Conservation Easement or the application thereof to any person or circumstance is found to be invalid, the remainder of the provisions of this Conservation Easement, or the application of such provision to persons or circumstances other than those as to which it is found to be invalid, as the case may be, shall not be affected thereby.

c. This Conservation Easement sets forth the entire agreement of the parties with respect to the Conservation Easement and supersedes all prior discussions, negotiations, understandings or agreements relating to the easement, all of which are merged herein. No alteration or variation of this Conservation Easement shall be valid or binding unless contained in a writing executed by the parties hereto.

d. Should there be more than one Grantor, the obligations imposed by this Conservation Easement upon each Grantor shall be joint and several.

e. The covenants, terms, conditions and restrictions of this Conservation Easement shall be binding upon, and inure to the benefit of, the parties hereto and all parties having or acquiring any right, title or interest in the Conserved Area, including holders of subdivision deeds, and shall continue as a servitude running in perpetuity with the Conserved Area.

f. The captions in this Conservation Easement have been inserted solely for convenience of reference and are not a part of this Conservation Easement and shall have no effect upon construction or interpretation.

g. Execution of this Conservation Easement does not constitute a waiver of the rights or ownership interest of the State of West Virginia in public trust property.

h. This Conservation Easement may be executed in any number of counterparts, all of which, taken together, shall constitute one and the same instrument.

viii

22.   Notwithstanding anything contained herein to the contrary, except for de minimis modifications as discussed below, any modification or termination of this Conservation Easement shall require the prior written approval of Grantee, its successors or assigns, and Third Parties.  Amendments to this Conservation Easement must be in writing by all parties hereto, and must be consistent with the conservation purposes of this Grant. Grantor shall record any modification or termination of this Conservation Easement in the Land Records of the county or counties where the Conserved Area is located within sixty (60) days of executing such a modification or termination.  Grantor shall provide Grantee, Antero and Third Parties with proof of recordation within thirty (30) days of recording by the County Clerk.  Grantor reserves unto itself the right to undertake de minimis modifications of the Conserved Area that are approved by Grantee.  A "de minimis modification" is a modification that results in an increased level of protection of or does not affect the natural resources protected by this Conservation Easement within the Conserved Area.

23.   For any modification, transfer, conveyance, or assignment accomplished under paragraphs 10, 18 or 22, Grantor shall amend this instrument by preparing and submitting to Grantee for review and approval:

   a.   A revised plan and metes and bounds description for the area to be preserved under the modified Conservation Easement (hereinafter the "Modification Documents"); and

   b.   An Amended Conservation Easement that reflects the modifications to the original Conservation Easement, the justification for the modification, and that also includes the deed book and page of the title deed for the property or properties subject to the modified Conservation Easement set forth in the Modification Documents.

24.   Grantor shall record the documents listed in paragraph 23, above, in the same manner and place as this original Conservation Easement was recorded.

25.   This Grant of Conservation Easement may only be removed pursuant to West Virginia Code 20-12-4 and consistent with this Grant of Conservation Easement.

   **TO HAVE AND TO HOLD** unto [GRANTEE], its successors and assigns forever.  The covenants, terms, conditions, restrictions and purposes imposed with this Conservation Easement shall not only be binding upon Grantor but also upon its agents, personal representatives, executors, assigns and all other successors to it in interest, and shall continue as a servitude running in perpetuity with the Conserved Area.

   **IN WITNESS WHEREOF**, Grantor has set its hand and seal on the day and year first above written, and directs that this instrument be recorded in the office of the [RELEVANT COUNTY].

ix

[GRANTOR]

By:_____
Name:_____
Title:_____

x

STATE OF _____
COUNTY OF _____

Be it remembered that on this _____ day of _____, 20___, before me, the subscriber, a
Notary Public, personally appeared: [NAME] and he thereupon acknowledged that he signed the
foregoing instrument in such capacity, and that said instrument is the voluntary act of deed of
said [NAME].


_____
Printed Name:_____
A Notary Public of _____

My Commission Expires: _____

xi

**EXHIBIT A**

**CONSERVED AREA**

**EXHIBIT B**

**CONSENT TO COMPLY WITH GRANT OF CONSERVATION EASEMENT**

With respect to its rights in the "Conserved Area," as defined in the Grant of Conservation Easement made on [DATE] by [GRANTOR], whose address is [ADDRESS], located in [CITY], [COUNTY], [STATE], in favor of [GRANTEE], Antero Resources Corporation, hereby expressly consents to comply with the restriction of said Grant of Conservation Easement.  This Consent is made pursuant to West Virginia Code § 20-12-4(d).

By:  Antero Resources Corporation _____
Name:  _____
Title:  _____

**Appendix D:  Model Deed Restriction**

Prepared by: [AUTHOR]

**DEED RESTRICTION**

THIS DECLARATION OF DEED RESTRICTIONS FOR CONSERVATION ("Declaration") made this _____ day of _____, 20__, by [*Name of Landowner*] ("Grantor"), having an address at _____;

WITNESSETH:

**WHEREAS**, [GRANTOR] is the owner of certain real property located in the [PROPERTY TITLE] (hereinafter "the Property"), and the Property is also described in a deed of record in the office of the Clerk of the County Commission, [COUNTY] at Deed Book [BOOK], Page [PAGE]; and

**WHEREAS,** Grantor, having the authority to do so, intends to record this Declaration in order to restrict subsequent disturbance and/or development of that certain portion of the surface of the Property described on Exhibit A attached hereto (the "Conserved Area") in perpetuity;

**WHEREAS**, the Conserved Area possesses open space and natural values (collectively, "Conservation Values") of great importance to Grantor, the people of [COUNTY], and the people of the State of West Virginia, and all current and future generations of mankind; and

**WHEREAS**, preservation of the Conserved Area is consistent with a central objective of a Consent Decree in the matter of [*Case name*], Civil Action No. _____ ("Antero CD"), Grantor agrees that USACE, EPA, and WVDEP, and their successor agencies (collectively "Third Parties"), are third-party beneficiaries under this Declaration, except that nothing herein creates a property interest in the Federal Government or the State of West Virginia with regard to the Conserved Area;

**NOW THEREFORE**, Grantor hereby agrees that the Conserved Area shall be subject in perpetuity to the following conveyances, covenants and restrictions:

1. This Declaration shall be a burden upon and shall run with the Conserved Area, and shall bind Grantor, its successors and assigns, in perpetuity.

2. Grantor shall record this Declaration in the Land Records of the county or counties where the Property is located within sixty (60) days of the effective date of this Declaration. Grantor shall provide Antero Resources Appalachian Corporation ("Antero") and Third Parties with proof of recordation and give notice of this Declaration to current record title holders of easements in the Conserved Area within thirty (30) days of recording by the County Clerk.

i

3.      The following activities are prohibited in the Conserved Area, except as necessary for the control of alien invasive or noxious plant or animal species or as necessary to accomplish restoration and/or mitigation described in Paragraph 10:

   a.     Removal, excavation, dredging, or disturbance of the surface;

   b.     Dumping of, storage of, or filling with soil, rock, biological material, trash, ashes, garbage, waste, or other materials;

   c.     Draining, impounding, or impairing the flow or circulation, or reducing the reach of waters, including wetlands; or any other discharge or activity requiring a permit under applicable clean water or water pollution control laws and regulations, as amended;

   d.     Installation of structures;

   e.     Placement of pavement or other impervious materials;

   f.     Alteration of the existing pattern of vegetation through removal, destruction, or planting of vegetation;

   g.     Except to the extent necessary to return the Conserved Area to a use consistent with its use prior to Antero's initial entry onto the Conserved Area, conversion of, or expansion into, any portion of the Conserved Area for use of agricultural, horticultural, aquacultural, silvicultural, livestock production, or grazing activities.  This prohibition also includes conversion from one type of these activities to another (e.g., from agricultural to silvicultural);

   h.     The use of fertilizers, herbicides or pesticides;

   i.     Removal, clearing, pruning, or mowing of live vegetation, including trees, unless Grantor demonstrates that such removal will result in habitat enhancement or to prevent a safety hazard, and Grantor has received written approval of the West Virginia Department of Environmental Protection;

   j.     The use of the Conserved Area to provide required open space for the development or subdivision of another property or to determine any other permissible residential, commercial or agricultural uses of another property; or any legal or de facto division, subdivision or portioning of the Conserved Area;

   k.     Any other use of or activity in the Conserved Area that is inconsistent with the purpose of this Declaration.

4.      It is the purpose of the Declaration to assure that the Conserved Area will be maintained as such and to prevent any unauthorized disturbance and/or development to the Conserved Area.

5.      Notwithstanding any provisions to the contrary, this Declaration is subject to and subordinate to any existing and duly recorded rights with respect to the Conserved Area. All structures, infrastructure, as well as all pre-existing easements or other duly recorded rights in the Conserved Area identifiable through a title search extending to documents placed of record within twenty (20) years prior to the date of this Declaration, shall be indicated on Exhibit A, which is attached to this instrument and includes a copy of the most recent property deed for the Property and a legal description sufficient to identify the boundaries of the Conserved Area.  Grantor certifies that to Grantor's actual knowledge, there are no previously granted easements existing in the Conserved Area that interfere or conflict with the purpose of this Declaration.

6.      All mortgages and deeds of trust granted or entered into after the date hereof affecting the Conserved Area will be subordinate to this Declaration.

7.      The Conserved Area is subject to the Antero CD.  Each deed, title or other instrument conveying an interest in the Conserved Area shall contain a notice stating that the Property is subject to the Antero CD and shall reference the recorded location of the Antero CD and any restrictions applicable to the Property under the Antero CD.

8.      Antero and Third Parties shall have the right to:

      a.      enter upon the Conserved Area for the purpose of inspecting the Conserved Area to determine compliance with the purposes and terms of this Declaration, or for any other purpose authorized by this Declaration or by the Antero CD.  When practicable, such entry shall be upon prior reasonable notice to the property owner.  This right of entry is in addition to and does not limit any right of entry otherwise granted by Federal or State law;

      b.      take any and all action within the Conserved Area necessary to address a situation that poses an immediate risk to health, life, property or the environment; and

      c.      take any and all action within the Conserved Area required by Federal or State law or approved by the Third Parties.

9.      Grantor grants to Third Parties a discretionary right to enforce this Declaration.  In the event of a breach of this Declaration by Grantor or another party, Third Parties shall notify Grantor of the breach.  If Grantor fails to take corrective action within 60 days of such notice, Third Parties may undertake actions to effect such corrective action, including bringing a judicial action against any person(s) or entity(ies) violating or attempting to violate this Declaration: provided, however, that no violation of this Declaration shall result in a forfeiture or reversion of title.  In any enforcement action, an enforcing party shall be entitled to a complete restoration for any violation, as well as any

other judicial remedy such as civil penalties.  The costs of breach, correction and/or restoration, including Third Parties' expenses, court costs, and attorney's fees, shall be paid by Grantor, provided Grantor is determined to be responsible for the breach. Enforcement shall be at the discretion of Third Parties, and no omissions or delay in acting shall constitute a waiver of any enforcement right.  These rights are in addition to, and shall not limit, enforcement rights available under other provisions of law or equity, under any applicable permit or certification, or under the Antero CD.

10.     Antero and/or its contractors shall have the right to enter upon the Conserved Area for the purpose of performing any work required by a restoration or mitigation plan approved under the Antero CD, including construction, planting, maintenance, monitoring, long-term management, or any other restoration, enhancement, or mitigation work specified therein, provided such work is conducted in accordance with such approved plan.

11.     Grantor reserves to itself, its successors or assigns, all rights as owners of the Property, including the right to engage in all uses of the Conserved Area not inconsistent with the purpose and terms of this Declaration.

12.     Grantor shall provide Antero and Third Parties written notice of any transfer or change in ownership of, or of the execution of any subsequent easement affecting, any portion of the Conserved Area, including but not limited to the name and address of the new owner at least thirty (30) days prior to the transfer or change in ownership, or execution of such easement.

13.     Grantor agrees that the terms, conditions, restrictions and purposes of this Declaration will be inserted in any subsequent deed, subdivision deed, lease, sub-lease or other legal instrument by which Grantor divests itself of any interest in any portion of the Conserved Area.  Notwithstanding the failure of Grantor to include the terms and restrictions of this instrument, it shall run with the land and be binding on all heirs, successors and assigns.

14.     Notwithstanding anything contained herein to the contrary, any modification or termination of this Declaration shall require the prior written approval of Third Parties. Amendments to this Declaration must be in writing, and must be consistent with the conservation purposes of this Declaration.  Grantor shall record any modification or termination of this Declaration in the Land Records of the county or counties where the Conserved Area is located within sixty (60) days of executing such a modification or termination.  Grantor shall provide Antero and Third Parties with proof of recordation within thirty (30) days of recording by the County Clerk.

15.     For any modification, transfer, conveyance, or assignment accomplished under Paragraph 12, Grantor shall amend this instrument by preparing and submitting:

        a.      A revised plan and metes and bounds description for the area to be preserved under the Declaration (hereinafter the "Modification Documents"); and

iv

      b.      An Amended Declaration of Deed Restrictions that reflects the modifications to the original Declaration, the justification for the modification, and that also includes the deed book and page of the title deed for the property or properties subject to the modified Declaration set forth in the Modification Documents.

16.     Grantor shall record the documents listed in Paragraph 15, above, in the same manner and place as this original Declaration was recorded.

17.     Miscellaneous.

      a.     The laws of the State of West Virginia shall govern the interpretation and performance of this Declaration.

      b.     If any provision of this Declaration or the application thereof to any person or circumstance is found to be invalid, the remainder of the provisions of this Declaration, or the application of such provision to persons or circumstances other than those as to which it is found to be invalid, as the case may be, shall not be affected thereby.

      c.     Should there be more than one Grantor, the obligations imposed by this Declaration upon each Grantor shall be joint and several.

      d.     The covenants, terms, conditions and restrictions of this Declaration shall continue as a servitude running in perpetuity with the Conserved Area.

      e.     The captions in this Declaration have been inserted solely for convenience of reference and are not a part of this Declaration and shall have no effect upon construction or interpretation.

      f.     The covenants, terms, conditions, restrictions and purposes imposed with this Declaration shall not only be binding upon Grantor but also upon its agents, personal representatives, executors, assigns and all other successors to it in interest, and shall continue as a servitude running in perpetuity with the Conserved Area.

18.     Any notice, demand, request, consent, approval or communication under this Declaration shall be sent by certified mail, return receipt requested or reliable overnight courier, addressed as follows:

        To Grantor:

          _____
          _____
          _____

        To Antero:

_____
_____
_____

To Third Parties:

TO EPA:

        Pamela J. Lazos
        Senior Assistant Regional Counsel
        Office of Regional Counsel
        United States Environmental Protection Agency
        Region III
        MC 3RC20
        1650 Arch St.
        Philadelphia, PA  19103-2029

        Associate Director, Office of Environmental Programs
        Environmental Assessment and Innovation Division
        United States Environmental Protection Agency
        Region III
        MC 3EA40
        1650 Arch St.
        Philadelphia, PA  19103-2029

TO THE CORPS:

        Dana M. Adipietro
        Assistant District Counsel
        U.S. Army Corps of Engineers
        Pittsburgh District
        1000 Liberty Ave., 22nd Floor
        Pittsburgh, PA  15222

        Jon T. Coleman
        Chief, Southern Section, Regulatory Branch
        U.S. Army Corps of Engineers
        Pittsburgh District
        1000 Liberty Ave., 22nd Floor
        Pittsburgh, PA  15222

        Paul J. Loftus
        Deputy District Counsel
        U.S. Army Corps of Engineers
        Huntington District

502 8th Street
Huntington, WV 25701

Lee A. Robinette
Chief, Energy Resource Branch
U.S. Army Corps of Engineers
Huntington District
502 8th Street
Huntington, WV 25701

TO WVDEP:

Chief Inspector
Environmental Enforcement
West Virginia Department of Environmental Protection
601 57th St.
Charleston, WV 25304

Chief
Office of Oil and Gas
West Virginia Department of Environmental Protection
601 57th St.
Charleston, WV 25304

19.   A party may change the address or person to whom notices to it are required to be given by notice given in the manner above provided.

   **IN WITNESS WHEREOF**, Grantor has set its hand and seal on the day and year first above written, and directs that this instrument be recorded in the office of the [RELEVANT COUNTY].


[GRANTOR]


By:_____
Name:_____
Title:_____

vii

STATE OF _____

COUNTY OF _____

Be it remembered that on this _____ day of _____, 20__, before me, the subscriber, a
Notary Public, personally appeared: [NAME] and he thereupon acknowledged that he signed the
foregoing instrument in such capacity, and that said instrument is the voluntary act of deed of
said [NAME].


_____

Printed Name:_____

A Notary Public of _____


My Commission Expires: _____

**EXHIBIT A**

**CONSERVED AREA**

## Appendix E: Mitigation Site

### I.       Agreement:

The parties have agreed that the following property shall be subject to restoration and that credits created by Defendant as a result of such remediation may be used by Antero for off-site mitigation, where agreed to and necessary as set forth in this Appendix E, pursuant to the terms and conditions of the Consent Decree among the United States of America, the State of West Virginia (by and through the West Virginia Department of Environmental Protection) and Defendant.

### II.      Property Description:

*See* Exhibit A to this Appendix E.

### III.     Delineation of Aquatic Resources:

The resources subject to this Appendix E have been delineated with methods accepted by the EPA and the U.S. Army Corps of Engineers ("Corps").  The Corps acknowledged the delineation, conducted by AllStar Ecology, in the April 13, 2015 Preliminary Jurisdictional Determination, which identifies any and all areas at the Mitigation Site which are potentially jurisdictional streams or wetlands, and shows the extent of the water which may be subject to restoration.

### IV.     Proposed Restoration:

Antero submitted a detailed Restoration Plan for the Mitigation Site to EPA, with subsequent revisions. The most recent plan is dated June 13, 2018.  The Restoration Plan must (a) be based on the functional capacity of current Site conditions, designed to restore those parts of the Mitigation Site chosen for restoration to pre-disturbance original conditions with regard to topography, structure and hydrologic flow to ensure that the physical, chemical, and biological functions and services that were provided by the impacted resources are restored to pre-disturbance levels to the extent practicable; (b) include a schedule for implementation; (c) include a computation of the credits which are anticipated to be created as a result of performing the restoration; (d) ensure that restored areas are stabilized so as to avoid landslides or slips, (e) utilize only native West Virginia species for planting; (f) incorporate quantitative performance measures; and (g) include a post-restoration monitoring plan for a period of at least five to ten years.

After review of the Restoration Plan, EPA will:  a) approve the Plan, in whole or in part; b) approve the Plan upon specified conditions; c) disapprove the Plan, in whole or in part; or d) any combination of the above.

If EPA disapproves all or part of a Restoration Plan, Defendant shall, within 60 days of receipt of EPA's disapproval, address the reasons for disapproval and resubmit the Restoration Plan for approval.  If a Restoration Plan submitted pursuant to this provision is disapproved in

whole or in part three times or more, EPA, in consultation with the Corps and the State, may itself correct the deficiencies in the Plan and require restoration in accordance with the plan developed by EPA, subject to Defendant's right to invoke Dispute Resolution pursuant to Section X of this Consent Decree.

Based on the plan provided to EPA in Exhibit A to Appendix E, 5,021 stream credits and 2.3 wetland credits as calculated in the West Virginia Stream and Wetland Valuation Metric ("WVSWVM") may be generated from the Mitigation Site and used to offset on-site impacts that have been or will be agreed to by the parties at the sites contained in Appendix A to this Consent Decree.  If, during the monitoring period, the Mitigation Site is not meeting performance standards and is unlikely to provide the projected credit numbers, Antero will provide alternative mitigation to compensate for the credits that will not be realized at the Mitigation Site without the need for approval from the Court, provided that the current estimate of credits which may be generated at the site may be subject to further modification based upon supplemental information contained in that subsequent Mitigation Site restoration plan dated June 13, 2018 and provided to EPA by Antero.

## V.        Restoration and Mitigation

Upon approval of a Restoration Plan (either with or without conditions or modifications by EPA), the Restoration Plan is incorporated into this Appendix E, and Defendant, or its representatives, shall implement the Plan as approved or modified by EPA.  Restoration work at the Mitigation Site shall be executed in accordance with the approved schedule.

## VI.       Communications.

All other correspondence related to this Mitigation Site should be submitted to the EPA representatives to whom communications are to be made pursuant to Paragraph 69 of the Consent Decree.

## VII.      Conservation Easement.

The property identified herein as the Mitigation Site is currently owned by Bear Knob Holdings LLC.  Antero shall receive the consent of Bear Knob Holdings, LLC, and shall require that a Conservation Easement be placed upon the Mitigation Site consistent with those terms and conditions contained in Appendix C.

**Exhibit A to Appendix E**



Turning Point Solutions, PLLC, dba

Mountain State Land Surveying

342 Sandstone Drive, Lost Creek, West Virginia 26385 304-476-8668

### Description of Conservation Easement
### For
### Bear Knob Holdings LLC.

### Being part of
### Tax Map 4C Parcel 7.1

A tract or parcel of land lying and being situate on the waters of Hackers Creek, in Warren District, Upshur County, West Virginia, more particularly described as follows:

## BKOMP CONSERVATION EASEMENT 1

Beginning at a T-Post, set, from which a 5/8-inch rebar with cap, set, corner to Bear Knob Holdings LLC (TM 4C Parcel 7.1) and corner to Richard A. Marple and Arveda K. Marple (TM 4C Parcel 4), bears N 24-36-15 E 1,072.29 feet, thence through the lands of said Bear Knob Holdings LLC (TM 4C Parcel 7.1) for twelve (12) new lines;

N 61-53-55 E 174.92 feet to a T-Post, set, thence;

N 74-19-20 E 108.62 feet to a T-Post, set, thence;

S 29-28-20 W 36.84 feet to a T-Post, set, thence;

S 37-16-10 W 205.78 feet to a T-Post, set, thence;

S 29-54-35 W 73.99 feet to a T-Post, set, thence;

S 05-03-50 W 267.93 feet to a T-Post, set, thence;

S 43-03-10 W 127.18 feet to a T-Post, set, from which a ¼-inch rebar, found, corner to said Bear Knob Holdings LLC (TM 4C Parcel 7.1) and corner to Dorsey Blonda King, Jr. et. al. (TM 4D Parcel 15) bears S 24-47-10 E 2,172.69 feet, thence;

N 29-00-10 W 76.78 feet to a T-Post, set, thence;

N 31-42-20 W 112.40 feet to a T-Post, set, thence;

N 44-03-05 E 219.47 feet to a T-Post, set, thence;

N 09-15-30 W 95.00 feet to a T-Post, thence;

N 05-57-35 W 94.27 feet to the Point of Beginning, containing 1.58 Acres, more or less, as determined by a survey in March 2017, as shown on a plat attached and hereto made part of this description.

Surveyed by Michael W. Ash, P.S. #2204

_Michael W. Ash_  4-15-17





Turning Point Solutions, PLLC. dba

## Mountain State Land Surveying
342 Sandstone Drive, Lost Creek, West Virginia 26385 304-476-8668

### Description of Conservation Easement
### For
### Bear Knob Holdings LLC.

### Being part of
### Tax Map 4C Parcel 7.1

A tract or parcel of land lying and being situate on the waters of Hackers Creek, in Warren District, Upshur County, West Virginia, more particularly described as follows:

### BKOMP CONSERVATION EASEMENT 2

Beginning at a T-Post, set, from which a 5/8-inch rebar with cap, set, corner to Bear Knob Holdings LLC (TM 4C Parcel 7.1) and corner to Richard A. Marple and Arveda K. Marple (TM 4C Parcel 4), bears N 09-40-45 E 863.03 feet, thence through the lands of said Bear Knob Holdings LLC (TM 4C Parcel 7.1) for twenty-seven (27) new lines;

N 71-27-00 E 283.96 feet to a T-Post, set, thence;

N 38-02-20 E 508.89 feet to a T-Post, set, thence;

S 79-20-55 E 342.18 feet to a T-Post, set, thence;

S 75-59-45 E 141.09 feet to a T-Post, set, thence;

S 72-13-35 E 100.03 feet to a T-Post, set, thence;

S 75-01-35 E 136.76 feet to a T-Post, set, thence;

S 66-13-05 E 112.26 feet to a T-Post, set, thence;

S 42-59-30 E 108.85 feet to a T-Post, set, thence;

S 47-57-05 E 54.86 feet to a T-Post, set, thence;

S 29-21-15 E 76.81 feet to a T-Post, set, thence;

S 13-21-20 E 140.63 feet to a T-Post, set, thence;

S 04-05-55 E 113.68 feet to a T-Post, set, thence;

S 30-02-00 E 52.53 feet to a T-Post, set, thence;

S 18-01-10 W 150.67 feet to a T-Post, set, thence;

S 48-43-05 W 154.11 feet to a T-Post, set, thence;

S 60-14-55 W 165.20 feet to a T-Post, set, thence;

N 76-26-10 W 226.56 feet to a T-Post, set, thence;

## <u>BKOMP CONSERVATION EASEMENT 2 (CONT.)</u>

S 54-43-40 W 127.83 feet to a T-Post, set, from which a ¼-inch rebar, found, corner to said Bear Knob Holdings LLC (TM 4C Parcel 7.1) and corner to Dorsey Blonda King, Jr. et. al. (TM 4D Parcel 15) bears S 10-53-55 E 2,098.61 feet, thence;

N 26-11-30 W 103.92 feet to a T-Post, set, thence;

N 89-28-20 W 455.73 feet to a T-Post, set, thence;

S 53-40-05 W 67.43 feet to a T-Post, set, thence;

N 23-09-25 W 252.82 feet to a T-Post, set, thence;

S 64-29-00 W 594.54 feet to a T-Post, set, thence;

N 07-41-10 E 240.58 feet to a T-Post, set, thence;

N 39-54-20 E 62.32 feet to a T-Post, set, thence;

N 34-00-55 E 197.57 feet to a T-Post, set, thence;

N 29-30-30 E 69.16 feet to the Point of Beginning, containing 21.13 Acres, more or less, as determined by a survey in March 2017, as shown on a plat attached and hereto made part of this description.

Surveyed by Michael W. Ash, P.S. #2204

*Michael W. Ash*   4-15-17



Turning Point Solutions, PLLC. dba

# Mountain State Land Surveying
342 Sandstone Drive, Lost Creek, West Virginia 26385 304-476-8668

### Description of Conservation Easement
### For
### Bear Knob Holdings LLC.

### Being part of
### Tax Map 4C Parcel 7.1

A tract or parcel of land lying and being situate on the waters of Hackers Creek, in Warren District, Upshur County, West Virginia, more particularly described as follows:

## BKOMP CONSERVATION EASEMENT 3

Beginning at a T-Post, set, from which a 5/8-inch rebar with cap, set, corner to Bear Knob Holdings LLC (TM 4C Parcel 7.1) and corner to Richard A. Marple and Arveda K. Marple (TM 4C Parcel 4), bears N 63-33-35 W 907.02 feet, thence through the lands of said Bear Knob Holdings LLC (TM 4C Parcel 7.1) for twenty-five (25) new lines;

N 23-42-50 E 92.02 feet to a T-Post, set, thence;

N 33-32-25 E 471.85 feet to a T-Post, set, thence;

S 71-26-05 E 115.29 feet to a T-Post, set, thence;

S 58-43-55 E 161.70 feet to a T-Post, set, thence;

S 45-10-25 E 231.05 feet to a T-Post, set, thence;

S 29-00-50 E 701.57 feet to a T-Post, set, thence;

S 02-20-45 E 602.61 feet to a T-Post, set, thence;

S 21-53-05 W 489.63 feet to a T-Post, set, from which a ¾-inch rebar, found, corner to said Bear Knob Holdings LLC (TM 4C Parcel 7.1) and corner to Dorsey Blonda King, Jr. et. al. (TM 4D Parcel 15) bears S 38-52-45 W 2,024.07 feet, thence;

N 72-34-10 W 463.21 feet to a T-Post, set, thence;

N 73-36-20 W 110.15 feet to a T-Post, set, thence;

N 24-35-30 W 334.36 feet to a T-Post, set, thence;

S 88-54-30 E 142.19 feet to a T-Post, set, thence;

N 58-31-05 E 256.30 feet to a T-Post, thence;

N 37-34-00 E 143.07 feet to a T-Post, thence;

N 10-52-45 E 120.47 feet to a T-Post, thence;

## BKOMP CONSERVATION EASEMENT 3 (CONT.)

N 10-54-35 W 117.22 feet to a T-Post, thence;

N 07-56-20 W 134.90 feet to a T-Post, thence;

N 28-52-00 W 72.72 feet to a T-Post, set, thence;

N 30-25-25 W 65.66 feet to a T-Post, set, thence;

N 37-40-30 W 120.47 feet to a T-Post, set, thence;

N 55-23-40 W 115.96 feet to a T-Post, set, thence;

N 72-23-40 W 88.85 feet to a T-Post, set, thence;

N 74-15-55 W 136.13 feet to a T-Post, set, thence;

N 74-01-25 W 126.84 feet to a T-Post, set, thence;

N 80-10-00 W 60.47 feet to the Point of Beginning, containing 22.46 Acres, more or less, as determined by a survey in March 2017, as shown on a plat attached and hereto made part of this description.

Surveyed by Michael W. Ash, P.S. #2204

